Donald W. VOSE, Executor, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 5673.

United States Court of Appeals
First Circuit.

Dec. 1, 1960.

Aldrich, Circuit Judge, dissented.

Loyd M. Starrett, Boston, Mass., with whom Henry E. Foley, Fernand A. Boudreau and Foley, Hoag & Eliot, Boston, Mass., were on brief, for petitioner.

George F. Lynch, Attorney, Department of Justice, Washington, D. C., with whom Howard A. Heffron, Acting Asst. Atty. Gen., and Lee A. Jackson, Melva M. Graney and Crombie J. D. Garrett, Attorneys, Department of Justice, Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This case posed several questions for the Tax Court of the United States but only one is presented to us by this petition to review that court's decisions. The sole question before us is whether certain so-called "Certificates of Indebtedness" issued by a trust in the years 1940, 1941 and 1942 were outright gifts to the persons to whom they were issued, or were "gifts in trust" to those persons and for that reason were not within the annual exclusion from gift tax permitted by § 1003(b) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A., quoted in the margin.[1]

The facts as stipulated and found by the Tax Court are as follows:

Donald W. Vose, the petitioner, is the sole surviving executor of Julien W. Vose who died, testate, a resident of Edgartown, Massachusetts, on August 3, 1943

---

1. "In the case of gifts (*other than gifts in trust* or of future interests in property) made to any person by the donor during the calender year 1939 and subsequent calendar years the first $4,000 of such gifts to such person shall not, for the purposes of subsection (a) [which defines "net gifts" to mean the total amount of gifts made during the calendar year], be included in the total amount of gifts made during such year" (emphasis supplied).

The decedent during his lifetime had followed the practice of making substantial gifts to members of his family. In 1935 he consulted counsel for advice about ways to avoid paying income taxes on the income he had been giving to his family, and also for advice about making provision for them in the future, and on December 25, 1935, on the advice of his counsel, he created a spendthrift trust which he called the "Vose Family Trust" and conveyed to its trustees a parcel of improved real property in Boston which was under lease for an annual rental of $25,000.

The decedent named himself and two members of his family as co-trustees in the trust instrument which provided that the trust was to be for his own sole use and benefit for his lifetime and thereafter for the use of such persons as he might by will or deed appoint, that the trustees were to pay the net income of the trust to him for his lifetime and thereafter to such persons and in such manner as he might by will or deed appoint, and that the trust should terminate upon the death of his last born child or upon the death of the survivor of any of his grandchildren living at the time of the creation of the trust, whichever event should be the last to occur. The trust instrument's fourteenth and final paragraph provided for the creation of the certificates of indebtedness with which we are here concerned in the following language:

"XIV. In addition to all other obligations hereunder, the Trustees shall from time to time upon the request of Julien W. Vose, execute and deliver to him certificates of indebtedness in the form hereto annexed and marked "A" in such amounts as he shall from time to time request and payable to such persons as he shall nominate, but not, in any event, in an aggregate sum of more than Three Hundred Thousand ($300,000.00) Dollars and not during the calendar year 1935 in an amount in excess of One Hundred Thousand ($100,000.00) Dollars nor in any calendar year thereafter in an amount in excess of Fifty Thousand ($50,000.00) Dollars."

The annexed form marked "A" is as follows:

"A"

"No. ....     This to certify    $ ......
that
The Vose Family Trust
is indebted to

...............................
in the sum of ................ Dollars
$1.00

to be paid out of the corpus of the trust upon its termination with interest at the rate of six percent per annum payable quarter-annually. All obligations hereunder are payable only out of the corpus of the trust. This certificate is personal to the Payee named herein and may not be transferred or assigned without the consent in writing of the Trustees of the Vose Family Trust endorsed hereon.

........................."

From the creation of the trust in 1935 to the decedent's death in 1943 the trustees, pursuant to requests of the decedent, issued, and the decedent delivered, 30 certificates of indebtedness payable to twelve members of his family in the aggregate face amount of $200,000.[2] None of the payees paid any money or gave anything of value in exchange for the certificates. After the execution and delivery of the certificates the trustees paid 6% interest to the payees named therein out of the trust income[3] and paid

---

2. During the years here involved, 1940, 1941 and 1942, 8 certificates, each in the face amount of $5,000 were issued and delivered to six members of the decedent's family. No recipient received over $5,000 in face amount in any year.

3. The Tax Court's finding that interest on the certificates of indebtedness was paid out of trust income is at variance with the provision of the certificates themselves that obligations thereunder were payable only out of the corpus of the trust. We only note this discrepancy, however, because the source of the interest paid on the certificates is of no consequence in deciding the issue presented.

the balance remaining thereafter to the decedent.

At the time of the decedent's death the fair market value of the real property which constituted the corpus of the trust was $250,000 and there was a mortgage outstanding upon it in the amount of $30,000, leaving its net value $220,000. The decedent's executors conceded that by retaining the beneficial use of the trust property for his life and also the power to appoint those who would have its use thereafter, the decedent subjected the corpus of the trust to inclusion in his estate for estate tax purposes. But they did not agree with the Commissioner as to the value of the corpus of the trust for the purpose of that tax; the Commissioner asserting its value to be $220,000 and the executors insisting that the face amount of the outstanding certificates of indebtedness, $200,000, should be deducted from that sum.

The Tax Court resolved this dispute in the taxpayer's favor, 1953, 20 T.C. 597, on the basis of a decree of the Probate Court of Dukes County, Massachusetts, entered in a proceeding brought by the trustees of the Vose Family Trust for instructions. The Tax Court found that notice of the hearing in that case was given to all interested parties and that it was non-collusive and adversary. Since the Tax Court in both the estate tax case and in this one ruled, and the parties agree, that Massachusetts law is controlling insofar as the nature of the certificates of indebtedness is concerned, see Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, the proceedings in the Dukes County Probate Court must be considered in some detail.

The trustees as petitioners in that court said that they were in doubt as to the validity and legal effect of the certificates of indebtedness they had issued and that a controversy had arisen "as to whether said Certificates are valid debts or obligations of the Trust or as to whether the legal effect of them was to create merely equitable beneficial interests in the trust fund, or whether they are void and of no effect whatsoever, and whether in any event they were subject to the power of appointment reserved by the grantor so that any indebtedness or other interest represented by said Certificates were extinguished by the exercise by Julien W. Vose of the said power of appointment reserved by him under said trust instrument." They also said that they were in doubt as to whether the certificates became payable on the death of Julien W. Vose or only upon the eventual termination of the trust upon the death of his youngest child or the survivor of his grandchildren living at the time of the creation of the trust whichever should be the last to occur. Wherefore they asked the court to "determine and adjudicate the legal effect" of the certificates of indebtedness they had issued under the declaration of trust of December 25, 1935.

The Dukes County Probate Court entered a decree in which it found and determined:

"That the certificates of indebtedness issued from time to time by the Trustees under said Declaration of Trust in the aggregate face amount of Two Hundred Thousand Dollars ($200,000) constitute valid obligations of said Trust enforceable, according to their tenor, in law and in equity as a first charge against and encumbrance upon the corpus of the Trust;

"That the aggregate face amount of said certificates of indebtedness is payable out of the corpus of the Trust as a first charge thereon at the time provided for termination of the Trust in Clause Eight of said Declaration of Trust; and that interest is payable quarter-annually on said certificates of indebtedness at the rate of 6 per cent per annum;

"That the execution and delivery of the certificates of indebtedness to the certificate holders constituted an irrevocable appropriation of the cor-

pus of the Trust to the extent of the aggregate face value of said certificates at the time of their execution and delivery and the corpus thus appropriated was accordingly not subject to or affected by the exercise of the general power of appointment reserved by said Julien W. Vose."

On the basis of these findings and conclusions of the Probate Court, the Tax Court said that it thought it had "been established that the decedent irrevocably made gifts, during his lifetime, of interests in the portion of the corpus and income of The Vose Family Trust which $200,000, principal amount, of trust certificates represents, and that such portion is beyond the reach of section 811 of the Code [26 U.S.C.A.]," 20 T.C. 597, at page 603. Wherefore the court reversed the Commissioner's determination of deficiency based on his view that the face amount of the trust certificates was not deductible from the net value of the real property which formed the corpus of the trust.

Following this decision of the Tax Court the Commissioner determined deficiencies in gift taxes for the years here involved [4] on the ground that no annual exclusion could be taken for any gift of a certificate because the statute, § 1003(b) (2), quoted above, permitted "No exclusion for future interests." [5] The Tax Court stated that the three essential issues to be considered in deciding whether the Commissioner's determination of gift tax deficiencies were correct were (1) whether any part of the gifts made during all the years then in issue (1936, 1937, 1938, 1940, 1941 and 1942) were gifts of future interests, (2) whether the gifts made in the years 1940, 1941 and 1942 were gifts in trust within the meaning of § 1003(b) (2) quoted herein-

above and (3) the value of each gift made during all of the years involved. It decided all three issues in favor of the Commissioner, but as already pointed out, the only question presented by this petition for review is whether the Tax Court correctly decided the second issue enumerated above.

The gifts of certificates of indebtedness obviously were not gifts in trust in the typical sense of a gift to A for the use and benefit of B. And, of course, the Tax Court did not hold that they were. It said that it thought it followed from its analysis that the certificates issued during the years in question "were in substance and legal effect gifts in trust." that is, as we understand it, that the certificate holders were more like beneficiaries of the trust than like its creditors, and for that reason were not within the annual exclusion from gift tax provided in § 1003(b) (2). It is true that the certificate holders' interests were not transferable without the trustees' assent and it is also true that no consideration was given for the certificates. But these facts do not establish that the effect of the certificates was not to incur debts. At the most they only have a tendency to support that view. They are not enough to outweigh the taxpayer's arguments.

The taxpayer argues that on the basis of legislative history and viewing the provision in its gift-tax setting, the "gifts in trust" exception of § 1003(b) (2) was designed and intended by those who framed it to depend in its application entirely upon technical form rather than upon substance and effect—that Congress did not intend to deny the annual exclusion from tax to gifts which were only "in substance and legal effect" gifts in trust but only intended to deny

4. He also determined gift tax deficiencies for other years, 1936, 1937 and 1938, during which certificates of indebtedness were issued but we are not here concerned with those years.

5. This determination is irrelevant now for the reason that the taxpayer is no

longer challenging the Tax Court's determination of the extent to which the gifts of certificates of indebtedness were gifts of future interests. He concedes that the excess of the face value of each certificate over the annual exclusion of $4,000 ($1,000) is includible in total gifts and hence taxable.

the exclusion to gifts which were in trust in a strict technical sense. The argument in a nut shell is that the exception was born of the desire to plug the loophole for escape from gift tax which would exist should the courts, by a literal application of the definition in § 1111(a)(1) of the Revenue Act of 1932, 26 U.S.C.A. (I.R.C.1939) § 3797(a), of the word "person" to include a trust, make it possible for a donor to escape gift tax altogether by the simple expedient of creating multiple trusts for the same beneficiary, each in the amount of the annual exclusion from gift tax. See Helvering v. Hutchings, 1941, 312 U.S. 393, 397, 61 S.Ct. 653, 85 L.Ed. 909.

There is some support for the taxpayer's argument in the legislative history of the provision's enactment. And there is also some support for the argument in the legislative history of its omission from the Revenue Act of 1942 for the reason that it was no longer necessary in view of the holding in Helvering v. Hutchings, supra, that the beneficiaries of a trust rather than the trustee or the trust itself are the donees of a gift in trust. But what persuades us is the taxpayer's argument based on the decree of the Dukes County Probate Court, which, as we have already pointed out, the Tax Court and the parties agree is controlling insofar as it determines the nature of the certificates of indebtedness.

It is true that the trustees did not ask the Dukes County Probate Court and that court in consequence did not specifically decide whether the donees of the certificates received outright gifts or gifts in trust. The obvious reason for this is that at the time the trustees initiated the proceeding in the Probate Court the problem confronting them was not one of gift tax law but one of estate tax law. Nevertheless, in answering the questions propounded to it by the trustees we think the Probate Court clearly indicated that in its view the donees of the certificates of indebtedness were not so much beneficiaries of the trust as its creditors.

In reply to the question whether the certificates, if valid at all, were "valid debts or obligations" of the trust or whether their legal effect was "to create merely equitable beneficial interests in the trust fund" the Probate Court said that the certificates constituted "valid obligations" of the trust "enforceable, according to their tenor, in law and in equity as a first charge against and encumbrance upon the corpus of the Trust." This positive affirmative answer to the question whether the certificates gave rise to valid debts or obligations of the trust is tantamount to a direct negative to the alternative question whether the legal effect of the certificates was "to create merely equitable beneficial interests" in the trust.

Moreover, the "tenor" of the certificates of indebtedness is clearly to create a debt. Furthermore, one does not ordinarily describe a beneficiary's interest as "a first charge against and encumbrance upon" the corpus of the trust. That description better fits the interest of a creditor of the trust.

The Probate Court's answers to the other questions asked it do not militate against, but if anything support, our interpretation of the meaning of its answer to the first question. Moreover, the creation of literal certificates of indebtedness fitted neatly into the decedent's evident overall purpose to leave so much of his property to his wife and descendants in trust as he might not choose to give them during his lifetime, as had been his practice, for, the corpus of the trust being real property, he could not give it away to the objects of his bounty in specie without confusing the title by splitting it up into impractically minute fractions.

A judgment will be entered vacating the decisions of the Tax Court of the United States and remanding the case to that Court for the entry of decisions in accordance with this opinion and the concessions of the taxpayer.

ALDRICH, Circuit Judge (dissenting).

Believing that the court has read too much into the probate court decree, and that the certificate holders were not cred-

itors, but owners of (preferred) equitable estates, Allen v. Stewart, 1913, 214 Mass. 109, 112, 100 N.E. 1092, with interest in the trust as a whole, Parkhurst v. Ginn, 1917, 228 Mass. 159, 172, 117 N.E. 202, I must respectfully dissent.