Gordon GRIFFIN, Jr. and Katherine C. Griffin, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. A 96–CA–760 SS.

United States District Court, W.D. Texas, Austin Division.

June 2, 1998.

Eric G. Behrens, Graves, Dougherty, Hearon & Moody, Austin, TX, Terry Lee Vanderburg, Graves, Dougherty, etal, Austin, TX, for Gordon M. Griffin, Jr., plaintiffs.

Cynthia E. Messersmith, Department of Justice, Dallas, TX, Dinah L. Bundy, Department of Justice, Maxus Energy Tower, Dallas, TX, for U.S.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

SPARKS, District Judge.

This is a tax refund case. The plaintiffs are claiming a refund of gift taxes made in calendar year 1993. In order to assess the amount of refund to which the plaintiffs may be entitled, the Court must determine the extent to which the plaintiffs have used their federal unified estate and gift tax credits. This inquiry entails a valuation of gifts the plaintiffs made to a trust in October 1991. The Court held a bench trial in this case on October 21, 1997, at which the plaintiffs Gordon M. Griffin, Jr. and Katherine C. Griffin appeared in person and by representation of counsel and the government appeared by representation of counsel. The Court, having considered the evidence presented at trial, the oral arguments and written briefs of counsel, and the applicable law, concludes that the plaintiffs are not entitled to a tax refund for the reasons set forth below.

### I.

The relevant facts pertaining to the nature of the gift transfers are largely undisputed, and the testimony and exhibits establish the following sequence of events. The plaintiffs were married on February 2, 1990 after a relatively brief courtship. Prior to September 23, 1991, Gordon Griffin owned all 2,850 shares of a closely held corporation, Gordon M. Griffin, Inc. ("the corporation"). *See* P–2. The corporation owned 5,044.1 acres of ranch land in Burnet County, Texas, United States Treasury bills in the amount of $250,000, and $3,334 in a checking account; the corporation had no liabilities. On September 23, 1991, Gordon Griffin irrevocably transferred 1,282.5 shares, representing a 45% interest in the corporation, to his wife Katherine Griffin. *See* P–3. Although the Griffins had no legal agreement regarding the future disposition of the shares, Gordon Griffin openly and repeatedly expressed to his wife, both before and after transferring the shares to her, that it was his hope and intention that she transfer her entire interest in the corporation to a to-be-formed trust. Less than a month later, on October 21, 1991, Gordon Griffin created a Trust for the benefit of the plaintiffs' newborn son, Gordon M. Griffin, III, and any

future children. *See* P-4 (trust agreement). On October 23, 1991, Katherine Griffin transferred her entire 45% interest to the Trust, *see* P-5, and five days later, Gordon Griffin transferred 1,282.5 shares, representing another 45% interest of the corporation, to the Trust, *see* P-6. As of October 28, 1991, the Trust held a 90% interest in the corporation, and Gordon Griffin retained the remaining 10% interest. Under the terms of the Trust, Gordon Griffin remained president of the corporation; in addition, Gordon Griffin placed substantial limitations on the ability of the trustee, a life-long friend, to remove him as president or to sell the assets of the Trust.

On March 10, 1992, each plaintiff filed a 1991 United States Gift and Generation Skipping Transfer Return (Form 709) ("Gift Tax Return"). *See* P-8 & G-29 (Gordon Griffin's 1991 Gift Tax Return); P-9 & G-30 (Katherine Griffin's 1991 Gift Tax Return). Gordon Griffin took a gift tax marital deduction for the gift to his wife, thereby paying no taxes on his initial transfer of the 45% interest in the corporation. *See* 26 U.S.C. § 2523 (West 1989) (providing an unlimited marital deduction for the value of gifts to spouses). Gordon Griffin and Katherine Griffin reported $477,965 and $476,965, respectively, as the fair market value of the gifts to the Trust.[1] The valuation of the gifts reflected (1) an appraisal of the ranch land of $300 per acre; and (2) a discount of 40% to reflect the minority interest and lack of marketability in the shares of a closely held corporation.[2] Since each plaintiff reported total taxable gifts amounting to less than the lifetime exemption of $600,000, neither paid any gift taxes. *See* 26 U.S.C. § 2502, 2505 (West 1989) (establishing a $600,000 federal gift tax lifetime exemption per individual).

In 1992, the Internal Revenue Service ("IRS") audited the plaintiffs' 1991 Gift Tax Return. On March 4, 1993, the IRS sent a notice to the plaintiffs of a proposed gift tax deficiency. The IRS determined that the value of the ranch land was $421 per acre and proposed a combined discount of 15% for minority interest and lack of marketability. *See* P-10 & P-11. The IRS assessed the taxable fair market values of $910,150 for Gordon Griffin's gift to the Trust and $909,150 for Katherine Griffin's gift to the Trust, triggering tax liabilities of approximately $118,000. On July 26, 1993, the plaintiffs filed amended gift tax returns for 1991. Gordon Griffin and Katherine Griffin reported $398,471 and $397,471, respectively, as the fair market values of the gifts, which reflected a value of the ranch land of $300 per acre and a combined discount of 50%. *See* P-15 & P-16.

On September 15, 1993, Katherine Griffin transferred by Warranty Deed a gift of a 25% undivided interest in 706.7 acres of land in Burnet County, Texas to the Trust; on September 20, 1993, Gordon Griffin transferred an equal amount of the same land to the Trust. *See* G-23 & G-25. On February 28, 1994, the Griffins filed their 1993 Gift Tax Returns, each reporting a taxable gift of $32,419 for the Warranty Deed transfers. *See* P-20 & P-21. Using the plaintiffs' revised figures, the combined value of the 1991 and 1993 gifts was $430,890 for Gordon Griffin and $429,890 for Katherine Griffin; the plaintiffs' figures were insufficient to trigger the gift tax. In the meantime, the IRS reviewed the plaintiffs' appeals of the 1991 gift tax deficiencies. James Christianson, an IRS appeals officer in the Mid–States Regional Appeals Division, valued the 1991 gifts at $594,250 for Gordon Griffin and $593,250

---

1. The difference is due to an additional $1,000 cash gift Gordon Griffin made to the Trust on October 21, 1991.

2. There are two types of discounts at issue in this case. One discount reflects the diminished value of a minority interest in a closely held corporation, *i.e.*, the decreased value of minority shares *vis-a-vis* majority shares. The second discount reflects the lack of marketability of shares of stock in a closely held corporation, *i.e.*, that there is no ready market for shares in a closely held corporation.

for Katherine Griffin. These figures reflected a value of the ranch land of $323 per acre and a combined discount of 30%. *See* G–31 (government's appraisal of the land by Capital Foresight, Inc.). On November 25, 1995, the IRS assessed gift tax deficiencies against Gordon Griffin in the amount of $9,868 and against Katherine Griffin in the amount of $9,498. *See* P–29 & P–30. On January 21, 1996, Gordon and Katherine Griffin paid their gift tax deficiencies. *See* P–31 & 32.

The plaintiffs filed this suit to recover the gift tax deficiency payments they made to the IRS in 1996. In determining whether the plaintiffs are entitled to a refund, the Court must resolve the larger issue of whether each plaintiff has surpassed the $600,000 lifetime exemption. The IRS does not challenge the plaintiffs' valuation of the 1993 Warranty Deed gifts made to the Trust; therefore, the only issue before the Court is the proper valuation of the 1991 gift transfers of the shares of the corporation to the Trust. There are three contested issues of law and fact in this case: (1) the proper valuation of the corporate assets; (2) the proper valuation of the discounts, if any, for minority interest and lack of marketability; and (3) if the Court determines that both discounts are applicable, the Court must then decide the proper methodology for applying multiple discounts. The Court will consider the second issue first. If no discounts are applied, the plaintiffs would not be entitled to a refund, and the Court therefore need not consider either the value of the land or the methodology by which multiple discounts should be applied.

## II.

The plaintiffs claim they are entitled to a 35% valuation discount for the lack of marketability and a 20% discount for the minority interest position of the gift. The government asserts that the separate transfer of shares of stock by husband and wife to the Trust was a sham solely intended to evade taxes; the government contends the Court should look to form over substance and deny the plaintiffs the bene-

fit of both discounts. In other words, the government asserts the Court should disregard Gordon Griffin's intervening gift to Katherine Griffin and instead value the gift as a 90% interest transfer of stock to the Trust. Alternatively, the government asserts the plaintiffs are entitled to a 30% discount for lack of marketability and a 15% minority interest discount.

 It is well-established that taxpayers have the right to arrange their affairs so as to minimize the taxes they pay. *See Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935) ("The legal right of a taxpayer to decrease the amount of what otherwise would be his [or her] taxes, or altogether avoid them, by means which the law permits, cannot be doubted."); *see also Boccardo v. Commissioner*, 56 F.3d 1016, 1018 (9th Cir.1995). In the context of federal income tax cases, this general rule gives way to the equally well-settled principle that sham transactions will not be given effect:

A fundamental principle of our income tax structure is the basic rubric that economic substance prevails over form. Accordingly, courts have concluded that sham transactions, having no economic effect other than the creation of income tax losses [or credits] cannot be recognized for tax purposes.

*Sandvall v. Commissioner*, 898 F.2d 455, 458 (5th Cir.1990) (citations and internal quotations omitted); *United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990); *see also Estate of Frank v. Commissioner*, 69 T.C.M. 2255, 2259 (1995) ("As a general rule, we will respect the form of a transaction. We will not apply substance over form unless the circumstances so warrant."). Thus, even if a transaction falls within the literal requirements of the tax statute, the transaction will be disregarded as a sham if it is fictitious, if it has no business purpose or economic effect other than the creation of tax deductions, or if its only purpose is tax avoidance. *See United States v. Fleming*, 19 F.3d 1325, 1328–29 (10th Cir.), *cert.*

*denied,* 513 U.S. 826, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994); *DeMartino v. Commissioner,* 862 F.2d 400, 406 (2nd Cir.1988); *ACM Partnership, Southampton–Hamilton Co. Tax Matters Partner v. Commissioner,* 71 T.C.M. ¶ 97,115 (1997) ("[T]he transaction must be rationally related to a useful non-tax purpose that is plausible in light of the taxpayer's conduct and useful in light of the taxpayer's economic situations and intentions.").

■ The plaintiffs' first line of argument is that the substance over form doctrine should not be applied to gift tax cases, as there can be no legitimate business purpose associated with a gift. The plaintiffs are correct that the vast majority of cases in which the substance over form doctrine is applied are income tax cases. However, at least three court of appeals (as far as the Court's research indicates, the only circuit courts to consider this precise issue) and the United States Tax Court have expressly or implicitly held that the "substance over form analysis applies to gift tax, as well as to income tax, cases." *See Heyen v. United States,* 945 F.2d 359, 363 (10th Cir.1991); *see also Schultz v. United States,* 493 F.2d 1225–26 (1974); *Vose v. Commissioner,* 284 F.2d 65, 68–69 (1st Cir.1960); *Estate of Murphy v. Commission,* 59 T.C.M. (P–H) ¶ 90,472 (1990). This conclusion is supported by the general principle enunciated in Gregory that

the question for determination is whether what was done, apart from the tax motive, was the thing which the statute

intended.... To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.

*See Gregory,* 293 U.S. at 469–70, 55 S.Ct. at 267–68; *see also Commissioner v. Court Holding Co.,* 324, U.S. 331, 334, 324 U.S. 331, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945) ("To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."), superseded by statute as stated in *Eckerd Corp. v. United States,* 37 Fed.Cl. 713 (1997). Therefore, the Court rejects the plaintiffs' argument that income tax cases—which, significantly, inquire into the useful purpose and legitimacy of the transaction—are inapposite to this case.

■ The plaintiffs' second line of argument is that the form of the transaction must be respected because Gordon Griffin relinquished all dominion and control over the 45% interest he gave to his wife. According to the plaintiffs, the fact that Katherine Griffin voluntarily transferred her entire 45% interest to the Trust less than one month after it was given to her is irrelevant because (1) she had legal ownership of the corporate shares to do with as she pleased, and (2) Gordon Griffin had no legal recourse if his wife decided not to transfer her shares to the Trust. The plaintiffs cite *Crummey v. Commissioner,* 397 F.2d 82 (9th Cir.1968) and *Estate of Cristofani v. Commissioner,* 97 T.C.M. 74 (1991) in support of this argument.[3]

---

3. *Crummey* and *Cristofani* both dealt with annual gifts that were made to irrevocable inter vivos trusts in which certain minor beneficiaries had unrestricted rights to withdraw amounts not to exceed the annual gift tax exclusion under § 2503(b) of the Tax Code. *See Crummey,* 397 F.2d at 82–84; *Cristofani,* 97 T.C.M. at 74–75. The only issue in both of those cases was whether the minor beneficiaries held a "present interest" in the property under § 2503(b). *See Crummey,* 397 F.2d at 83–84 ("The whole question on this appeal is whether or not a present interest was given by the petitioners to their minor children so as to qualify as an exclusion under § 2503(b)."); *See Cristofani,* 97 T.C.M. at 74 ("The sole

issue for decision is whether transfers of property to a trust, where the beneficiaries possessed the right to withdraw an amount not in excess of the section 2503(b) exclusion within 15 days of such transfers, constitute gifts of a present interest in property within the meaning of section 2503(b)."). Both courts held that the gift was a "present interest" because the trust instruments gave the beneficiaries the legal power to demand immediate possession of the corpus. *See Crummey,* 397 F.2d at 88; *Cristofani,* 97 T.C.M. at 83. The facts and issues of *Crummey* and *Cristofani* are materially different from the facts and issues present here, and therefore these cases do not inform the Court's inquiry.

The Tenth Circuit recently considered and rejected this same argument in *Heyen*, in which the executrix of her mother's estate sought a refund of gift taxes imposed on the decedent's transfer of shares of stock. *See Heyen*, 945 F.2d at 362. The circuit court opinion described the facts of the case as follows:

> Decedent transferred blocks of stock, each individually valued by her to be less than $10,000 [the gift tax exclusion amount], to twenty nine recipients. Twenty-seven of the recipients soon thereafter signed blank stock certificates so that the stock could be reissued to decedent's family. The government imposed a fraud penalty after concluding decedent's plan for transfer of the stock attempted fraudulently to evade the gift tax.
>
> . . .
>
> The recipients either did not know they were receiving a gift of stock and believed they were merely participating in stock transfers or had agreed before receiving the stock that they would endorse the stock certificates in order that the stock could be reissued to decedent's family. It was decedent's wish in transferring the stock that gift taxes be avoided. Decedent died nine months after the transfers. Plaintiff filed a gift tax return excluding the transfers of stock.

*See id.* at 361.

The circuit court upheld the jury's verdict in favor of the government and the district court's denial of the plaintiff's motions for judgment notwithstanding the verdict and for new trial. The Tenth Circuit found the following facts persuasive: (1) the plaintiff was a sophisticated taxpayer; (2) the decedent wished to avoid gift taxes; (3) it was the decedent's intention that the stock be returned to her family; (4) each of the transfers took place within a short time after the initial transfers; and (5) the plaintiff and her accountant informally discussed the decedent's intention to transfer the stock to intermediate recipients, who would then endorse the stock certificates so that the stock could be reissued to the decedent's family. *See id.* at 365. Significantly, the circuit court was not persuaded to respect the form of the transaction because two of the twenty-nine intermediary recipients decided to retain the shares transferred to them:

> Although the two transfers initially were the same as the other transfers, the end result was not the same. Despite the decision of two of the recipients to keep their stock, the decedent's intent with regard to all of the stock was apparently the same. The evidence at trial showed, and the jury properly found, that decedent intended her family to be the ultimate beneficiaries of the stock. Thus, the two recipients' decisions to keep their stock did not change the appropriate tax treatment for the other stock transfers.

*Id.* at 363.

Similarly, the Fourth Circuit applied the substance over form doctrine in the context of gift taxes in *Schultz v. United States*, 493 F.2d 1225 (1974). In *Schultz*, for three consecutive years, "A" gave shares of a closely held corporation to his three children and to the three children of his brother, "B." On the same day, "B" gave the same number of shares in the same closely held corporation to each of his three children and to the three children of "A." *See id.* at 1225. The Fourth Circuit upheld the district court's disallowance of the annual tax exclusion with respect to the gifts, holding that "the primary purpose of the reciprocal transactions was for each brother to effect enlarged gifts to his own children." *Id.* at 1226.

*Estate of Murphy v. Commissioner*, 59 T.C.M. (P–H) ¶ 90,472 (1990), is also instructive. In *Murphy*, the decedent transferred 1.76% of her 51.41% controlling interest in a closely held corporation to her children eighteen days before her death. The estate claimed a minority discount in valuing the remaining 49.65% interest of the corporate stock included in the decedent's estate. The Tax Court refused to allow the discount, concluding that the

only purpose of the inter vivos transfer of the 1.76% interest was to reduce the estate tax by obtaining the minority discount.[4] *See id.* at 90–2257–61. In support of its decision, the Tax Court cited numerous cases in which a minority discount was not applied when "the explicit purpose and effect of fragmenting the control block of stock was solely to reduce Federal tax." *See id.* at 90–2256 (citing cases).

Gordon Griffin testified at trial that he intended to transfer a 90% interest in the corporation to the Trust and that he wished to minimize or extinguish his gift tax liability by dividing the stock into two separate, 45% interest transfers. He discussed his plan with Katherine Griffin before he transferred his stock to her. He spoke to his wife every night for one month to encourage her to transfer her shares to the Trust. It was only after Katherine Griffin transferred her stock to the Trust that Gordon Griffin transferred the second 45% interest in the corporation to the Trust. The testimony of Gordon Griffin, Katherine Griffin, and Carol Marie

Wood (Gordon Griffin's secretary at the time of the transfers) establishes that Gordon Griffin did not give Katherine Griffin the stock to provide for her support or for her financial benefit. Finally, Katherine Griffin transferred her entire interest in the corporation to the Trust exactly one month after it was given to her. It is beyond question, therefore, that the only purpose in the two transfers was to take advantage of the minority interest and marketability discounts. That the transfers were concocted in conjunction with Gordon Griffin's estate planning efforts (which the plaintiffs suggest is a legitimate, non-tax purpose) and that Katherine Griffin was under no legal obligation to transfer the stock to the Trust is irrelevant. *See Heyen*, 945 F.2d at 365; *Kornfeld v. Commissioner*, 137 F.3d 1231, 1235–36 (10th Cir.1998). Furthermore, it is immaterial that Gordon Griffin worried and feared his wife would not transfer her shares to the Trust—the operative fact is that Katherine Griffin did transfer her shares to the Trust, in keeping with the plaintiffs' informal but explicit intention and plan.[5] *See Heyen*, 945 F.2d at 363.

**4.** The Tax Court reached the opposite conclusion, however, in *Frank*, a case with facts somewhat similar to *Murphy*. In *Frank*, the decedent owned, through a revocable trust, 50.3% of the stock of a corporation. The decedent's son, acting through power of attorney, withdrew a block of stock representing an 18.2% interest of the total stock remaining. The decedent died two days after the transfer. The Tax Court refused to apply the substance over form doctrine, stating,

> [i]f tax avoidance was the sole motive, a substantially smaller number of shares could have been transferred. We find it unnecessary to decide this dispute over the motive for the transfer.

*See id.* at 2259. The plaintiffs argue the only distinction between *Murphy* and *Frank* is the percentage size of the block transferred. The plaintiffs argue that since a large percentage of stock was transferred to the Trust in this case, the Court should follow *Frank* and respect the form of the transaction. The Court disagrees—the proper distinction, implicit in the passage above, is the blatant appearance of a tax avoidance motive in *Murphy* and the lack of one in *Frank*. In this case, the tax avoidance motive is both readily transparent and conceded by the plaintiffs. Gordon Griffin testified he wanted to transfer a 90% inter-

est in the corporation to the Trust (thereby leaving him with a 10% interest and, in conjunction the terms of the trust instrument, president of the corporation). The *only* way to accomplish this goal and still obtain the dual discounts was to transfer the stock in two 45% interest blocks. The facts of this case are more analogous to the facts of *Murphy*, and therefore the result reached in *Murphy* is appropriate here.

**5.** Indeed, this fact lends further support to the Court's conclusion that Gordon Griffin's only purpose in transferring the 45% interest in stock to Katherine Griffin was for tax avoidance purposes, and not to provide for his wife's support. As for the level of worry and fear Gordon Griffin felt, it was apparent at trial that Gordon Griffin is an astute businessman and would not have transferred the stock to his wife had he not been relatively certain that she would transfer the stock to the Trust. *See United States v. General Geophysical Company*, 296 F.2d 86, 89 (5th Cir.1961) ("[T]he stockholders may have had complete legal freedom to refuse to resell the assets to the corporation, but there was almost no likelihood that they would do so."), *cert. denied*, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962).

The Court must also consider the purpose of the Tax Code provisions which allow taxpayers to use the discounts. *See General Geophysical Company*, 296 F.2d at 88 ("Each case must be decided on its own merits by examining the form and substance of the transactions and the purpose of the relevant tax provisions to determine whether recognition of the form of the transaction would defeat the statutory purpose."). The parties acknowledge that both the minority interest and lack of marketability discounts are allowed so that the actual value of the property transferred can be correctly evaluated. *Cf. Estate of Bright v. United States*, 658 F.2d 999, 1001 (5th Cir.1981) (en banc) (upholding the principle that valuation is based on the interest that passes, not the interest held by the transferor before the transfer or the interest held by the transferee after the transfer). The Tax Code recognizes that minority shares in closely held corporations lose value as a result of the lack of a controlling interest and a ready public market, and the discounts are intended to take these economic realities into account. In this case, allowing the discounts would have quite the opposite effect of that intended by the statute. Rather than accurately valuing the shares transferred to the Trust, the discounts would significantly undervalue the stock simply because the controlling interest in the corporation was fragmented for a period of slightly over one month.

Although the facts of *Heyen* and *Murphy* are arguably more extreme than the facts found in this case, the Court nevertheless is confident that the result is the correct one. The substance of the transaction, as the plaintiffs themselves admitted, was to transfer a 90% interest to the Trust. Like the plaintiff in *Heyen*, the plaintiffs engaged in a clever and sophisticated scheme by which Katherine Griffin was merely the intermediary through which the stock passed on its way to the ultimate beneficiary, the Trust. *See Heyen*, 945 F.2d at 363. Moreover, the fact that the IRS failed to raise the inapplicability of the discounts to the transfers at issue during the plaintiffs' audit does not preclude the United States from asserting this theory at trial, as the plaintiffs bear the burden of proving they overpaid their taxes. *See King v. United States*, 641 F.2d 253, 259 (5th Cir. Unit B 1981).

### III.

At the time of the transfer of the gifts, the corporation had ranch land and $253,334 in liquid assets. *See* 26 U.S.C. § 2512(a) (indicating that the value of the gift is determined by looking at the fair market value of the gift at the time of the transfer). At trial, the plaintiffs claimed the value of the ranch land at the time of the gift transfer was $1,513,203, reflecting a value of $300 per acre. Therefore, according to the plaintiffs, the total value of the corporation at the time of the transfers, including its liquid assets, was $1,766,537. Given the inapplicability of the minority interest and lack of marketability discounts, and even if the Court accepts the figures proposed by the Griffins, each of the plaintiffs has well exceeded the $600,000 individual federal gift tax lifetime exemption ($1,766,537 × 45% = $794,942). Accordingly, the Court concludes the plaintiffs are not entitled to a refund for the gift taxes they paid in 1993.

For the foregoing reasons, the Court enters the following orders:

IT IS ORDERED that the Motion for Sanctions under Federal Rule of Civil Procedure 37(c)(1), filed by the plaintiffs Gordon Griffin and Katherine Griffin on October 16, 1997 [# 23–1], is OVERRULED AND DENIED; and

IT IS FURTHER ORDERED that the plaintiffs Gordon Griffin and Katherine Griffin TAKE NOTHING by their causes of action under 28 U.S.C. § 1346(a)(1).