# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2020

No. 19-60244

Lyle W. Cayce
Clerk

ESTATE OF FRANK D. STREIGHTOFF, DECEASED, Elizabeth Doan
Streightoff, Executor,

> Petitioner - Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

> Respondent - Appellee

Appeal from the Decision
of the United States Tax Court

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Respondent–Appellee the Commissioner of Internal Revenue issued Petitioner–Appellant Estate of Frank D. Streightoff (the "Estate") a notice of deficiency for the Estate's 2012 tax return. The Commissioner determined that the Estate had a $491,750.00 tax liability which differed from the Estate's tax return valuation. The Estate petitioned the U.S. tax court to challenge the deficiency. Following a bench trial, the tax court sustained the Commissioner's determinations in a written order. We affirm the tax court's decision.

I.

The parties have stipulated to this set of facts.  Frank D. Streightoff (the "decedent") died testate on May 6, 2011.   His daughter, Elizabeth Doan Streightoff ("Elizabeth"), serves as the executor of the decedent's Estate.

A.

Estate Planning

The decedent made the following estate plans on October 1, 2008:

SILP and the Partnership Agreement

Streightoff Investments, LP ("SILP"), a Texas limited liability partnership, was formed.  SILP is funded using the decedent's assets.

The decedent held an 88.99% limited partner ownership interest in SILP.  The decedent's daughters each held a 1.54% limited partner ownership interest.   His sons and former daughter-in-law each held a 0.77% limited partner ownership interest.   SILP's sole General Partner is Streightoff Management, which holds a 1.00% limited partnership ownership interest. Elizabeth is the Managing Member of Streightoff Management.

In relevant part, the SILP Partnership Agreement ("SILP Agreement") states:

> 9.2   Permitted Transfers. . . . [A]n  Interest Holder may at any time [t]ransfer his Interests to (a) any member of transferor's Family, (b) the transferor's executor, administrator, trustee or personal representative to whom such interests are transferred at death or involuntarily by operation of law, or (c) [to any purchaser, but subject to the right of first refusal held by the persons listed in section 9.4]
>
> . . .
>
> 9.7 Admissions of Interest Holders as Partners. A transferee of an Interest may be admitted to the Partnership as a Substituted Limited Partner only upon satisfaction of the conditions set forth below:

(a) Each General Partner consents to such admission which consent may be granted or withheld in the sole and absolute discretion of each General Partner;

(b) The Interests with respect to which the transferee is being admitted were acquired by means of a Permitted Transfer . . . .

. . .

12.6 <u>Governing Law</u>. Any matter which may arise hereunder which is no therein specifically provided for shall be determined in accordance with and governed by the Laws of the State of Texas including the Texas Uniform Partnership Act . . . .

### The Revocable Trust and SILP Assignment

The decedent established the Frank D. Streightoff Revocable Living Trust ("Revocable Trust"). Elizabeth was the trustee of the Revocable Trust. While the decedent was the grantor and held the power to modify (*e.g.* amend, alter, revoke, or terminate) the trust, he did not change the Revocable Trust. The decedent was also the beneficiary of the Revocable Trust and remained the beneficiary upon his death.

On the same day the trust and partnership were created, the decedent assigned his 88.99% SILP interest to the Revocable Trust. The Revocable Trust was the assignee. The Assignment of Interest to the Revocable Trust (the "Assignment") was executed via his power of attorney, Elizabeth. She also signed (1) the approval of the transfer as Streightoff Management's Managing Member, SILP's General Partner; and (2) for the assignee, as the trustee for the Revocable Trust. The Assignment states "Assignor's interest . . . together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Assignee, its beneficiaries and assigns forever." The parties have stipulated that this was a Permitted Transfer under Section 9.2.

The Assignment expressly noted that "by signing this Assignment of Interest, [the assignor and assignee] hereby agree[] to abide by all the terms and provisions in that certain Limited Partnership Agreement of [SILP]."

B.

The Estate's Tax Return and Notice of Deficiency

The Estate filed its tax return on May 6, 2012 , with a taxable estate of $4,801,662.00, which included the SILP interest stake and the other assets in the Revocable Trust.   The Estate listed the 88.99% interest stake as an assignee interest with a purported value of $4,588,000.00 as of the alternate valuation date.[1]   The valuation reflected claimed discounts for lack of marketability, lack of control, and lack of liquidity.  The tax return ultimately reported to overpaying taxes by $153,593.00.

On January 9, 2015, the Commissioner issued a Notice of Deficiency to the Estate, stating "notice is hereby given that . . . [the] estate tax liability of [the Estate] discloses a deficiency of $491,750.00."  Attached to the notice was Form 890 (Waiver Form), Letter 937 (addressed to the Power of Attorney), Form 1273 (Report of Estate Tax Examination Changes), Form 6180 (Line Adjustments to Estate Tax), and a Form 886-A (Explanation of Items).  In the Form 886-A, the Commissioner stated that the fair market value of the Estate's 88.99% interest in SILP was corrected and increased to $5,993,000.00 as compared to the original tax return valuing the interest at $4,588,000.00.  The Commissioner concluded that the net asset value should only be discounted for a lack of marketability.

C.

---

[1] Assets that are included in the gross estate are generally included at their fair market value at the  time of decedent's death.  *See* Internal Revenue Code §§ 2031–2044.  However, if the executor elects (as the case here), the value of the estate can be measured at an alternate valuation date.

Trial and Tax Court Ruling

The Estate petitioned the tax court to challenge the Commissioner's determinations. The Estate moved for summary judgment, claiming that the notice was subject to provisions of the Administrative Procedures Act ("APA"). 5 U.S.C. § 702. The tax court denied the motion and held that the APA did not apply to proceedings related to the redetermination of a deficiency.

The petition proceeded to a bench trial where the tax valuation experts, Juliana Vicelja for the Commissioner and Oliver Warnke and Alan Harp for the Estate, were the only witnesses. The tax court issued an opinion upholding the Commissioner's findings. *See Estate of Frank D. Streightoff v. Comm'r. of Internal Revenue*, T.C. Memo. 2018-178, 2018 WL 5305054 (2018). It concluded that the Notice of Deficiency complied with the Internal Revenue Code ("IRC") § 7522(a). *Id.* at \*5. It also determined that the Revocable Trust held a limited partner interest in SILP at the alternate valuation date because the Agreement validly assigned the 88.99% SILP interest as a limited partnership both in substance and form. *Id.* at \*6−8. In turn, as the beneficiary of the Revocable Trust, the decedent's Estate included a limited partnership interest in SILP. The Estate timely appealed these findings.

II.

We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1). Similar to district court decisions, when reviewing tax court decisions, "[f]indings of fact are reviewed for clear error and issues of law are reviewed de novo." *Green v. Comm'r*, 507 F.3d 857, 866 (5th Cir. 2007); *see also Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014) (The "characterization of a transaction for tax purposes is a question of law subject to de novo review, but the particular facts from which that characterization is made are reviewed for clear error.") (quoting *Southgate Master Fund, L.L.C. ex rel. Montgomery Capital Advisors, LLC v. United States*, 659 F.3d 466, 480 (5th Cir. 2011)).

"Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole, [citation] or so long as [we have] not been left with the definite and firm conviction that a mistake has been made." *Chemtech*, 766 F.3d at 460 (quoting *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) and *Streber v. Comm'r*, 138 F.3d 216, 219 (5th Cir. 1998)).

## III.

The Estate challenges the tax court's decision on two primary grounds. First, it contends that in using a substance over form rationale to conclude that the Estate held a limited partnership interest, the tax court opinion stands contrary to Texas Partnership law and violated a doctrine set forth in *Sec. & Exch. Comm'n v. Chenery Corp.* (the "*Chenery* doctrine"), 332 U.S. 194, 196 (1947). Second, the Estate asserts that the notice fails to comply with section 7522(a) of the IRC or the APA.

## A.

### The Transferred Interest Under the Assignment

The Estate's first argument relates to the tax court's characterization of the SILP interest as a limited partnership interest.

To evaluate an estate for tax purposes, a tax court relies on state law to discern the type of assets held within the estate. *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish*, 456 F. App'x 336, 342 (5th Cir. 2011) (citing *Drye v. United States*, 528 U.S. 49, 58 (1999)). Texas is the governing jurisdiction, as provided in Section 12.6 of the SILP Agreement. Regarding partnership interests, Texas law counsels that we "look to the Texas Uniform Partnership Act for guidance *only* when the partnership agreement is silent." *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex. 1976) (emphasis added); *cf*. TEX. BUS. ORG. CODE § 153.251(b) (outlining governing provisions for partnership assignments which are applicable *unless* "otherwise provided by the partnership agreement"). Section 12.6 of the Agreement echoes Texas law,

and provides for Texas as the governing jurisdiction for all matters *if* that matter is not specifically provided for in the SILP Agreement. *See*, *supra*, Sect.I.A. Thus, to resolve the nature of the interest assigned to the Estate, we look to the SILP Agreement (as it governs the Assignment), and because the Agreement is not silent to the issue at hand, it is unnecessary to consult Texas law for clarity.

The parties stipulate that the Assignment was a Permitted Transfer under Section 9.2. This provision permits limited partners to transfer their interest to a member of the limited partner's family. The decedent is the transferor under the Assignment. While this transfer assigns interest to the Revocable trust, the decedent is effectively assigning the interest to himself, a member of his family. Indeed, in creating the Revocable Trust, the decedent (*i.e.* the settlor) designated himself as the beneficiary, per Trust Articles 3.01 and 5.02. *Cf. Shurley v. Tex. Comm. Bank—Austin, N.A. (In re Shurley)*, 115 F.3d 333, 338 (5th Cir. 1997) (stating that under Texas law, a settlor will not escape his creditors by "setting up a . . . trust and naming himself as beneficiary").[2] Thus, the Assignment comports with Section 9.2 as a Permitted Transfer.

*Substituted Limited Partner*. Section 9.7 provides the requirements for attaining the legal status of a Substituted Limited Partner as a transferee or assignee. *Accord* TEX. BUS. ORG. CODE § 153.253(1) (stating that an assignee "may become a limited partner if and to the extent that . . . (1) the partnership agreement provides . . ."). To be admitted as a Substituted Limited Partner, Subsection (b) of Section 9.7 mandates that the transferred interest be

---

[2] *U.S. v. Estabrook*, 78 F. Supp. 2d 558, 560 (N.D. Tex. 1999) (stating that creditors may reach trust assets where the defendants created a revocable trust where they are the "co-trustees, settlors, and beneficiaries of the trusts").

acquired via Permitted Transfer under 9.2.[3]  As stipulated by the parties, this is a Permitted Transfer; thus, Section 9.7(b), is satisfied.

The parties diverge on Section 9.7(a)—which requires that the transferee obtain consent from Streightoff Management, SILP's General Partner.  Section 9.7 does not qualify the type of consent necessary for this provision, *e.g.* written.  The SILP Agreement uses consent and approval interchangeably, and the words are only distinguished with the qualifier "written."[4,5]  Given such qualifying language is absent in Section 9.7(a), Streightoff Management's managing member, Elizabeth, has unilateral discretion to admit this Assignment interest as a Substituted Limited Partner.

According to the Estate, the Section 9.7 conditions were not met because there is an absence of Streightoff Management's consent to admit a transferee or assignee as a Substituted Limited Partner.  Instead, it maintains that the Assignment conveyed the decedent's 88.99% limited partnership interest as an unadmitted assignee interest under Section 9.6—which states that the assignee will receive the assignor's allocations and distributions but will not have access or right to any SILP information or accounting.  The Commissioner's position is that the Assignment's broad language transferred the decedent's full partnership rights to the Revocable Trust.  And when Elizabeth signed and approved the Assignment, she consented to the transfer

---

[3] Section 9.7 contains three additional enumerated conditions under ((c)-(e)) that require the transferee to furnish all documents and instruments requested by Streightoff Management and pay all costs in connection with being admitted into SILP.  These subsections are not germane to our discussion.

[4] Sections 1.5, 3.2, 3.3, 7.2, 7.5, 12.1 require written approval or consent, and Sections 7.9, 9.7(a), 9.4(d) simply require approval or consent.

[5] Black's Law Dictionary defines "consent" as "Agreement, *approval*, or permission as to some act or purpose."  Consent, BLACK'S LAW DICTIONARY (3d pocket ed. 2001) (emphasis added).

of decedent's 88.99% interest as a Substituted Limited Partner interest. We agree with the Commissioner.

Although the document is labeled "Assignment of Interest," the unambiguous language of the Assignment purports to convey more than an assignee interest. *Kerr v. Comm'r. of Internal Revenue*, 113 T.C. 449, 467 (1999) (holding that although the documents refer to the trustees as assignees, the description of the assigned interests contained a limited partner interest), *aff'd*, 292 F.3d 490 (5th Cir. 2002). The Assignment states that the decedent assigns "all and singular the rights and appurtenances thereto in anywise belonging." There is no limiting or restrictive language. It is difficult to reconcile the Estate's characterization of the Assignment given the document's language. For the Estate to claim that the Assignment only transferred an unadmitted assignee interest—which is limited to allocations and distributions (per Section 9.6)—would be contrary to the Assignment's explicit terms. *Cf. Kerr*, 113 T.C. at 467.

As to consent, Elizabeth signed the Assignment under the following legend: "APPROVED BY". In giving written approval, Elizabeth's signature was binding on SILP. *See* TEX. BUS. ORG. CODE § 101.254(b) (stating, in the context of an L.L.C., "[a]n act committed by [such an agent of the company] for the purpose of apparently carrying out the ordinary course of business of the company, including the execution of an instrument, document, mortgage, or conveyance in the name of the company, binds the company"). Her signature represents that SILP recognized that this Permitted Transfer was conveying "all and singular . . . [SILP] rights and appurtenances" of the decedent. This encompassed his 88.99% limited partnership interest.

The Estate avers that the Assignment's written approval was to effectuate the transfer under Section 7.2 of the agreement, which requires written approval for assignments of interest. However, the parties have

already stipulated that this is a Permitted Transfer under Section 9.2, and Section 9.2 Permitted Transfers need not adhere to Section 7.2's conditions. In other words, because this transfer was permitted under Section 9.2, no signature was required under Section 7.2. But even assuming the purpose of the signature was to satisfy Section 7.2, that does not foreclose the possibility that Elizabeth's signature also satisfied Section 9.7(a). Indeed, the Agreement does not specify the type of consent necessary under 9.7(a). The signature itself also makes no attempt to disclaim the portion of the Assignment purporting to convey the entirety of decedent's limited partner interest or otherwise confine the written approval to any particular section of the SILP Agreement. Therefore, in the execution of this conveyance of the decedent's limited partnership interest, Streightoff Management consented to the substitution of a limited partnership interest to the Revocable Trust via the Assignment.

*Economic Substance*. From an economic reality standpoint, we also agree with the tax court's alternative substance over form rationale. *Estate of Streightoff*, 2018 WL 5305054, at \*7 ("[R]egardless of whether an assignee or a limited partnership interest had been transferred, there would have been no substantial difference before and after the transfer to the revocable trust."). Assuming we were to accept the Estate's argument that the Assignment conveyed an unadmitted assignee interest as a matter of form, the substance of the transaction will nonetheless prevail. The substance over form doctrine permits a court to determine a transaction's characterization according to its "underlying substance of the transaction rather than its legal form." *Southgate Master Fund*, 659 F.3d at 480. Here, looking beyond the formalities of this intrafamily transfer, the Assignment lacks economic substance outside of tax avoidance. *Griffin v. United States*, 42 F. Supp. 2d 700, 703 (W.D. Tex. 1998) ("[E]ven if a transaction falls within the literal requirements of the tax statute, the transaction will be disregarded . . . if it has no business purpose or economic

effect other than the creation of tax deductions, or if its only purpose is tax avoidance."). While SILP limited partners appear to enjoy several managerial and oversight powers that unadmitted assignees do not[6], there were no practical differences after the Assignment was executed.    Other than Elizabeth, there is no record of SILP's limited partners, the decedent's children, exercising their partnership rights or responsibilities.  For example, this partnership held no meetings or votes, nor was there any attempt to remove Streightoff Management as SILP's general partner.    Without genuine nontax circumstances present, the Assignment is the functional equivalent of a transfer of limited partnership interest.  *See Kerr*, 113 T.C. at 467 (Under similar facts, the court held that "[t]he objective economic realities underlying the transfers" support that "there were no significant differences . . . between the rights of limited partners and assignees."); *see also Streightoff*, 2018 WL 5305054, at *7.

Finally, the Estate's *Chenery* argument also fails.  "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by

---

[6] Whether that interest is deemed an unadmitted assignee or limited partnership interest is significant in terms of degree of control of SILP.

As an 88.99% unadmitted assignee interest, you would be afforded no rights as to SILP's accounting, record inspections, and affairs (per Section 9.6).

On the other hand, a limited partner that owns a 75% or more limited partnership interest (like we have here under the Assignment) can do the following: (1) with written notice, remove the General Partner, Streightoff Management which can terminate the Partnership (Article V); (2) reconstitute the Partnership and elect a successor General Partner (Section 1.5); and approve the admission of additional limited partners (see Section 3.3).  Moreover, Section 1.5(b) provides that before withdrawing from SILP, the General Partner, Streightoff Management, must obtain written consent from 75% of the "Percentage of Ownership then held by all the Limited Partners."  Lastly, Section 1.5(a) provides that 90% of the partnership interests can terminate SILP by written agreement. In turn, with an 88.99% limited partnership interest, one would only need an additional limited partner's agreement to terminate the Partnership.

the grounds invoked by the agency." *See Chenery*, 332 U.S. at 196. Such a decision is not implicated here because the tax court is redetermining the tax deficiency notice de novo. *See Dobson v. Comm'r*, 320 U.S. 489, 501 (1943). Because the tax court is not critiquing the Commissioner's deficiency determination, there is no agency decision to review, and *Chenery* is therefore inapplicable.

This interpretation complies with the SILP Agreement and does not offend Texas partnership law. *See* TEX. BUS. ORG. CODE § 153.251(b); *Park Cities*, 534 S.W.2d at 672. We therefore AFFIRM the tax court's ruling that the Estate holds a substituted limited partnership interest in SILP.[7]

## B.

## Notice of Deficiency

The Estate contends that the Notice of Deficiency fails to comply with the statutory requirement under 26 U.S.C. § 6212(a).

IRC section 6212(a) provides that, "[i]f the Secretary [of the Treasury] determines that there is a deficiency in respect of any tax imposed by [certain provisions of the Internal Revenue Code,] he is authorized to send notice of such deficiency to the taxpayer." The notice "shall describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to tax, and assessable penalties included in such notice." 26 U.S.C. § 7522(a). The statute further provides that "[a]n inadequate description under the preceding sentence shall not invalidate such notice." *Id.*

---

[7] The Estate also takes issue with the tax court's valuation of the Estate's fair market value because the tax court failed to recognize the Estate's assignee interest in SILP. Again, this dispute turns on the SILP interest characterization, rather than a disagreement with the tax court's value computation. Because we affirm the tax court's classification of the SILP interest as a limited partnership interest, we also affirm the tax court's estate valuation.

Here, the Notice of Deficiency issued to the Estate stated that a deficiency in their income tax had been determined. Attached to it were forms explaining the reasoning for the deficiency. The Form 886-A explicitly stated that the fair market value of the SILP interest was increased. Because the fair market value of the SILP interest increased, the taxable estate increased. This is outlined in Form 6180 which determined that the Estate was valued at $6,206,662.00, an increase of $1,405,000.00 over the original $4,801,662.00 tax value. These adjustments, and others, are included in the report of tax examination changes (Form 1273) that recalculated the tax penalty at $491,750.00. Consequently, this Notice of Deficiency (including its attachments) fulfills the statutory requirement under section 6212. *Selgas v. Comm'r*, 475 F.3d 697, 700 (5th Cir. 2007) ("Like our sister circuits, we conclude that a notice of deficiency is valid as long as it informs a taxpayer that the IRS has determined that a deficiency exists and specifies the amount of the deficiency."). Even assuming *arguendo* that the notice description was inadequate, we still cannot invalidate it on that basis because section 7522(a) explicitly prohibits us from setting aside a notice for lacking the descriptive element. *See Selgas*, 475 F.3d at 700; *accord Pasternak v. Comm'r*, 990 F.2d 893, 897 (6th Cir. 1993) (stating that "no particular form is required for a valid notice of deficiency"); *Olsen v. Helvering*, 88 F.2d 650, 651 (2d Cir. 1937) ("[T]he notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough.").

The Estate also argues that the APA is applicable when resolving deficiency notice determinations. This argument incorrectly extends the reach of the APA's judicial review provisions to govern the review of all agency actions.

The APA entitles "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to judicial review of the agency action. 5 U.S.C. § 702. However, as the Fourth Circuit articulated, the "APA's general procedures for judicial review . . . were not intended by Congress to be superimposed on the Internal Revenue Code's specific procedures for de novo judicial review of the merits of a Notice of Deficiency," for "Congress did not intend for the APA 'to duplicate the previously established special statutory procedures relating to specific agencies.'" *QinetiQ U.S. Holdings, Inc. & Subsidiaries v. Comm'r*, 845 F.3d 555, 561 (4th Cir. 2017) (quoting *Bowen v. Mass.*, 487 U.S. 879, 903 (1988)); *see also Clapp v. Comm'r*, 875 F.2d 1396, 1403 (9th Cir. 1989). When "the APA was enacted," a number of statutes already "defined the specific procedure to be followed in reviewing a particular agency's action," including procedures for specific courts to conduct review. *Bowen*, 487 U.S. at 903; *see Porter v. Comm'r*, 130 T.C. 115, 121 (2008) ("When the APA was enacted in 1946, the law governing review of tax deficiencies was already well established."). As the Supreme Court explained in *Dickinson v. Zurko*, the APA "grandfathered" existing statutory schemes providing specific procedures for judicial review, as well as common-law standards of review clearly "recognized by law." 527 U.S. 150, 155 (1999). Congress made clear that the APA's judicial review proceedings were not intended to supplant existing statutory schemes that set forth clear pre-existing procedures for review, like the deficiency statute at issue here, section 7522(a). *Cf. Dickinson*, 527 U.S. at 154–55 (Congress required exclusions from the APA's judicial review provision to be "express[]" only in "*subsequent statute*[*s*]") (italicized in original). Thus, the Estate's APA argument is without merit because "the APA does not supersede specific statutory provisions for judicial review." *Porter*, 130 T.C. at 118.

Accordingly, we AFFIRM the tax court's ruling that this was a valid Notice of Deficiency.

## IV.

For the foregoing reasons, we AFFIRM the tax court's judgment.