113 T.C. No. 30


UNITED STATES TAX COURT


BAINE P. AND MILDRED C. KERR, DONORS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14449-98.                    Filed December 23, 1999.


    In 1993, Ps and their children formed two family
limited partnerships (KFLP and KILP).  The KFLP and KILP
partnership agreements contain identical restrictions on
liquidation of the partnerships.  In June 1994, Ps
transferred limited partnership interests in KFLP and
KILP to the University of Texas (the university).

    On Dec. 28, 1994, Ps created separate grantor
retained annuity trusts (GRAT's).  Ps each transferred a
44.535-percent class B limited partnership interest in
KFLP to their GRAT's.  The GRAT's remainder interests
were intended to benefit Ps grandchildren through
generation-skipping trusts.

    On Dec. 30, 1994, the university was admitted as a
limited partner of KILP.  On Dec. 31, 1994 and 1995, Ps
transferred limited partnership interests in KILP to
their children.

Ps filed Federal gift tax returns for 1994 and 1995. Ps computed the value of the limited partnership interests in KFLP that they transferred to the GRAT's by applying discounts for lack of liquidity and minority interest. Ps computed the value of the limited partnership interests in KILP that they transferred to their children by applying a discount for lack of liquidity. R determined that sec. 2704(b), I.R.C., bars Ps from applying a discount for lack of liquidity in computing the value of the partnership interests that Ps transferred to the GRAT's and to their children.

Ps filed a motion for partial summary judgment arguing that sec. 2704(b), I.R.C. is not applicable alternatively because: (1) The GRAT's trustees received only assignee interests, as opposed to limited partnership interests; (2) the disputed transfers must be valued as assignee interests under sec. 25.2512-1, Gift Tax Regs.; and (3) the restrictions on liquidation set forth in the partnership agreements do not constitute "applicable restrictions" within the meaning of sec. 2704(b), I.R.C.

Held: Ps transferred limited partnership interests to the GRAT's in both form and substance.

Held further: Pursuant to sec. 25.2512-1, Gift Tax Regs., the value of the limited partnership interests is equal to the price that a hypothetical willing buyer would pay to a willing seller for the limited partnership interests.

Held further: The restrictions on liquidation in dispute do not constitute "applicable restrictions" within the meaning of sec. 2704(b), I.R.C.

John W. Porter, for petitioners.

Lillian D. Brigman and John D. Maceachen, for respondent.

OPINION

JACOBS, Judge: This matter is before the Court on petitioners' motion for partial summary judgment, filed pursuant to Rule 121.[1] Petitioners contend that they are entitled to partial summary judgment that section 2704(b) is not applicable in valuing the limited partnership interests that they transferred to their grantor retained annuity trusts and to their children during 1994 and 1995.[2] For the reasons set forth below, we will grant petitioners' motion.

Background[3]

Baine P. Kerr and Mildred C. Kerr were married in 1942 and have four adult children, Baine P. Kerr, Jr., John Caldwell Kerr, James Robinson Kerr, and Mary Kerr Winters (the Kerr children). The

---

[1]    All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

[2]    Petitioners also moved for partial summary judgment that their interests in the grantor retained annuity trusts were "qualified interests" within the meaning of sec. 2702(b). Respondent subsequently conceded the point, and we issued an order granting so much of petitioners' motion for partial summary judgment as pertained to that issue.

[3]    The following summary of the relevant facts is based on the parties' stipulations with attached exhibits and other pertinent materials in the record. They are stated solely for the purpose of deciding the pending motion and are not findings of fact for this case. See Rule 1(a); Fed. R. Civ. P. 52(a).

Kerr children are financially independent. Petitioners have 13 grandchildren.

Petitioners both graduated from the University of Texas. Baine P. Kerr (petitioner) also graduated from the University of Texas Law School.

After serving in World War II, petitioner joined the law firm of Baker & Botts in Houston, Texas, subsequently was admitted as a partner, and ultimately managed the firm's corporate law department.

Petitioner left Baker & Botts to serve in various executive positions at Pennzoil Co. Between 1964 and 1994, petitioner served on Pennzoil's board of directors and as president. In 1989, he received a $10 million bonus for work that he had performed in a lawsuit that Pennzoil had filed against Texaco.

S. Stacey Eastland (Eastland), an attorney at Baker & Botts, advised petitioners on estate planning matters for many years. Eastland has written extensively on the use of family limited partnerships (and particularly transfers of assignee interests) as an estate planning tool.[4] In September 1993, Eastland proposed that petitioners create two limited partnerships. Eastland advised petitioners that the limited partnerships could be used as a source

---

[4] See Eastland, Family Limited Partnerships: Non-Transfer Tax Benefits, 10 Probate and Property (Mar./Apr. 1993); Eastland, "The Art of Making Uncle Sam Your Assignee Instead Of Your Senior Partner: The Use of Partnerships In Estate Planning", SD 63 ALI-ABA 1153 (May 1999).

for making gifts to their children. Eastland further advised petitioners that the partnerships should include a charity as a partner in light of the recent enactment of section 2704 and to "make sure that traditional valuation rules apply to the partnerships."[5]

Kerr Issue GST Trust

On December 29, 1993, petitioners, as grantors, and their children, as trustees, executed a document entitled "Agreement Creating the Kerr Issue GST Trusts". The agreement provided that each of the Kerr children would act as the trustee of a separate trust under which he or she would be the primary beneficiary. The agreement further provided that each trust would terminate upon the death of the primary beneficiary and that any remaining trust property would pass to the living issue of the primary beneficiary; i.e., the Kerr grandchildren. On December 29, 1993, petitioners executed separate wills, which included "pour over" provisions to the Kerr Issue GST Trusts in an amount equal to the available generation-skipping tax exemption.

---

[5] Sec. 2704(b), quoted infra pp. 20-21, generally provides that restrictions on the liquidation of a family partnership will not be considered in valuing a gift of a partnership interest from one family member to another if the family has control of the partnership before the transfer and the family can remove the restriction on liquidation after the transfer.

Kerr Family Limited Partnership

On December 31, 1993, petitioners and the Kerr children executed an agreement forming the Kerr Family Limited Partnership (KFLP) under the Texas Revised Limited Partnership Act (TRLPA), Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (West Supp. 1993). Petitioners made all capital contributions to KFLP in the form of three life insurance policies on their lives with a face amount totaling approximately $7 million. The Kerr children did not make any capital contributions to KFLP.

At the time KFLP was formed, petitioners were the sole general partners. However, petitioners immediately assigned a portion of their general partnership interest to each of the Kerr children. In particular, each of the Kerr children received a .2325-percent KFLP general partnership interest. There is no evidence in the record that petitioners executed a written consent admitting the Kerr children as general partners of KFLP.

Following the transfers described above, petitioners retained the following partnership interests in KFLP: (1) A combined 100-percent class A limited partnership interest;[6] (2) a combined 2-

---

[6] Pursuant to sec. 5.01 of the KFLP partnership agreement, class A limited partners were entitled to an annual guaranteed payment.

percent general partnership interest; and (3) a combined 97.07-percent class B limited partnership interest.

Kerr Interests Limited Partnership

On December 31, 1993, petitioners, their children, and KFLP executed an agreement forming the Kerr Interests Limited Partnership (KILP) under TRLPA. Petitioners made all capital contributions to KILP in the form of stocks, bonds, and real estate with an aggregate fair market value of approximately $11 million. The Kerr children did not make any capital contributions to KILP.

At the time KILP was formed, petitioners were the sole general partners. However, petitioners immediately assigned all of their general partnership interest in KILP to KFLP and a portion of their class B limited partnership interest in KILP to KFLP and the Kerr children. In particular, KFLP received a 2-percent general partnership interest and an 18-percent class B limited partnership interest in KILP, while the Kerr children each received a .0785-percent class B limited partnership interest in KILP. There is no evidence in the record that petitioners executed a written consent admitting KFLP as a general partner of KILP.

Following the transfers described above, petitioners retained a combined 100-percent class A limited partnership interest in KILP[7] and a combined 76.686-percent class B limited partnership interest.

_____

[7] Pursuant to sec. 5.01 of the KILP partnership agreement, class A limited partners were entitled to an annual guaranteed payment.

In 1995, petitioners transferred additional assets to KILP with an aggregate fair market value of approximately $9.9 million.

Partnership Agreements

The KFLP and KILP partnership agreements are identical in all material respects. They include a number of provisions pertinent to the pending motion.

Section 3.03 of the partnership agreements states that the general partners shall appoint petitioners to serve jointly as the managing partner, that if either petitioner fails or ceases to serve as managing partner, then the other shall continue to serve as managing partner, and, if both petitioners cease or fail to serve as managing partner, then Mary Kerr Winters shall serve as managing partner. Section 3.10(b) states the general rule that no limited partner shall have any control over the management of the partnerships. However, section 3.09(e) states that the partnership shall not take action with respect to certain enumerated "Major Decisions" without prior written consent of a majority of the limited partners. Section 3.10(e) identifies "Major Decisions" as extraordinary events such as the partnership's filing a petition in bankruptcy, any act that would make it impossible to carry on the partnership's business, and any act in contravention of the partnership agreement.

Section 3.06 states that no person shall be admitted as a general or limited partner without the consent of all general partners, except as provided in article VIII of the agreements.[8] Section 3.10(a) states that no other person may become a limited partner of the partnerships except by way of a transfer permitted under and effected in compliance with the partnership agreements.

Section 3.10(c) states that limited partners shall not be entitled to the withdrawal or return of their contributions to the partnerships except to the extent, if any, that distributions are made pursuant to the partnership agreements or upon termination of the partnerships.

Section 8.01 states the general rule that no limited partner or spouse of a limited partner shall make a "disposition" of an interest in the partnership owned or held by him except with the consent of the partnership and all other partners. The term "disposition" is defined in section 8.02 as any sale, assignment, gift, exchange, transfer, change in beneficial interest of any trust or estate, distribution from any trust or estate, change in ownership of a corporate or partnership partner, or any other disposition of a limited partnership interest, whether voluntary or involuntary, direct or indirect. However, section 8.02 states that

---

[8] The pertinent sections of article VIII of the partnership agreements are summarized infra pp. 9-10.

a "disposition" does not include a transfer to a "permitted assignee". The term "permitted assignee" is defined in section 8.03 to include, among others, each existing partner, any person who is a lineal descendant of both petitioners, a trustee of any trust that is more than 75 percent actuarially held for permitted assignees, any partnership owned exclusively by permitted assignees, or a charity.

Section 8.04 states that any limited partner desiring to make a disposition of all or any part of his or her limited partnership interest shall first submit a written offer to sell the limited partnership interest to the partnership and the remaining partners. Sections 8.11 and 8.12 set forth a formula for determining the amount that the partnership or partners will pay for such limited partnership interests.

Section 8.19 states that any disposition of a limited partnership interest shall be effective only to give the assignee the right to receive the share of profits to which his assignor would otherwise be entitled. Section 8.20 states, in pertinent part, that upon the transfer of a general partnership interest to a permitted assignee, the general partners shall admit the transferee into the partnership as a class B limited partner.

Section 8.21 states that no person not already a partner shall become a partner or acquire any rights to participate in the

management of the partnership except with the unanimous consent of the partners. However, the provision further states that the terms of article VIII shall apply to an assignee as if he were a substituted partner.

Section 9.02 states that no limited partner shall have the right to withdraw from the partnerships before the partnerships dissolve and liquidate. However, class B limited partners have a "put right"; i.e., the right to require the partnership to purchase part or all of a class B limited partnership interest at "fair market value" as defined in section 8.12. The latter section defines fair market value under the so-called willing buyer/willing seller standard, with the caveat that the hypothetical willing buyer of the limited partnership interest will have no withdrawal or put rights.

Section 10.01 sets forth the liquidation provisions at the center of the present controversy. Section 10.01 states that the partnerships will dissolve and liquidate on the earlier of (1) December 31, 2043, (2) by agreement of all the partners, or (3) on the occurrence of certain narrowly defined acts of dissolution.

Transfers to University of Texas

Petitioners donated approximately $750,000 to the university of Texas (the university) between 1975 and 1999. Between 1981 and 1983, petitioners donated $100,000 to the university to establish

the Mildred Caldwell and Baine Perkins Kerr Centennial Professorship in English History and Culture. In 1988, petitioners donated Pennzoil Co. stock valued at $433,687 to the university to enhance the aforementioned endowment and to redesignate the professorship as a chair--the Mildred Caldwell and Baine Perkins Kerr Centennial Chair in English History and Culture.

On June 24, 1994, petitioners and a representative of the university executed two documents entitled "Assignment of Partnership Interest", which state that petitioners were transferring to the university one value unit of a class A limited partnership interest in KFLP and nine value units of a class A limited partnership interest in KILP. The assignments state that petitioners desired to assign a portion of their interests in KFLP and KILP as more particularly described in schedule I thereto. Schedule I to the assignments states in pertinent part: "The Assigned Partnership Interest constituted a Class A Limited Partnership Interest in * * * [the partnerships] when owned by Assignors, and when owned by Assignee shall constitute a Class A Limited Partnership Interest in said partnership."

On December 30, 1994, the KILP partnership agreement was amended to state that the university would be admitted as a class A limited partner.

Transfers to Grantor Retained Annuity Trusts

On December 28, 1994, petitioner Baine P. Kerr created the Baine P. Kerr 1994 Retained Annuity Trust under which he served as

the sole initial trustee. On the same date, petitioner Mildred C. Kerr created the Mildred Caldwell Kerr 1994 Retained Annuity Trust under which she served as the sole initial trustee. (The above-described trusts will hereinafter be referred to as the GRAT's.) The GRAT's were structured to provide petitioners with two annuity payments--the first payment was due December 29, 1994, and the second payment was due December 30, 1995. The GRAT's were each set to terminate on the earlier of December 30, 1995, or the date of the grantor's death.

On December 28, 1994, petitioners each executed a document entitled "Assignment of Partnership Interest", stating that they were each transferring to the GRAT's trustees a 44.535-percent class B limited partnership interest in KFLP as more particularly described in Schedule I thereto. The parties agree that the GRAT's trustees were permitted assignees within the meaning of section 8.03 of the KFLP partnership agreement. Schedule I to the assignments states in pertinent part: "The Assigned Partnership Interest constituted a Class B Limited Partnership Interest in [KFLP] when owned by Assignor and, when owned by Assignee, shall constitute a Class B Limited Partnership Interest in said partnership."

On December 29, 1994, and December 30, 1995, petitioners each executed documents entitled "Assignment of Annuity" in which they sold the rights to their annual GRAT's annuity payments in exchange for promissory notes from the GRAT's. On December 29, 1994, and

December 30, 1995, the GRAT's transferred demand notes to petitioners as required under the assignments described above. The original principal amounts due on the December 30, 1995, GRAT's demand notes held by petitioners Baine P. Kerr and Mildred C. Kerr were $795,148.76 and $795,716.99, respectively.

On December 29, 1994, petitioners (in their individual capacities and as GRAT's trustees) executed documents entitled "Security Agreement-Assignment of Partnership Interest" under which the GRAT's assigned to petitioners, as security for the GRAT's demand notes, the GRAT's class B limited partnership interests in KFLP.

During 1995, petitioners received interest payments on the GRAT's demand notes totaling $18,792.47. The GRAT's were terminated on December 30, 1995, and the remaining assets and liabilities of the GRAT's were transferred to the Kerr Issue GST Trusts.

By separate agreements dated February 28, 1998, petitioners agreed that the remaining principal and interest payments due on the December 30, 1995, GRAT's demand notes--then the liabilities of the various Kerr Issue GST Trusts--would be forgiven subject to the condition that the trustees agree to pay any Federal and State gift, estate, inheritance, transfer, succession, and generation-skipping transfer tax associated with the transfer.

Additional Transfers to the Kerr Children

On December 31, 1994, petitioners each transferred a .085-percent class B limited partnership interest in KILP to each of the Kerr children. On December 31, 1995, petitioners each transferred a .09375-percent class B limited partnership interest in KILP to each of the Kerr children.

Petitioners' Federal Gift Tax Returns

Petitioners filed Federal gifts tax returns for 1994 in which they reported gift tax liabilities attributable to the transfers that they made to the GRAT's trustees and to their children. In an appraisal report (attached to the returns) prepared by Howard Frazier Barker Elliott, Inc., petitioners determined the fair market value of the KFLP class B limited partnership interests that they transferred to the GRAT's trustees by applying a 25-percent discount for lack of liquidity or marketability to the value of the KILP interests held by KFLP, and a 17.5-percent minority-interest discount and a 35-percent discount for lack of liquidity or marketability on the net asset value of KFLP's assets. Petitioners computed the fair market value of a 44.535-percent limited partnership interest in KFLP as follows:

| | | |
|---|---|---|
| Total net asset value (KFLP) | | $3,196,366 |
| Less class A capital account | | 10,000 |
| | | 3,186,366 |
| Limited partnership percentage | 44.535% | |
| NAV of the interest | | 1,419,048 |
| Minority-interest discount | 17.5% | 248,333 |
| Marketable minority interest value | | 1,170,715 |
| Discount for lack of marketability | 35.0% | 409,750 |
| Fair market value | | 760,965 |

Petitioners further reported that 95 percent of the fair market value of the KFLP class B limited partnership interests that they transferred to the GRAT's trustees was attributable to their retained annuities, while the remaining 5 percent (or $38,050 (rounded)) represented the amount of their taxable gifts to the remainder beneficiaries of the GRAT's.

Petitioners computed the fair market value of the KILP class B limited partnership interests that they transferred to their children in 1994 and 1995 by applying a 25-percent discount for lack of liquidity or marketability.

Respondent's Determinations

Respondent issued a notice of deficiency to petitioner Baine P. Kerr determining deficiencies of $698,401 and $10,024 in his Federal gift taxes for 1994 and 1995, respectively.  Respondent issued a notice of deficiency to petitioner Mildred C. Kerr determining deficiencies of $698,401 and $10,024 in her Federal gift taxes for 1994 and 1995, respectively.  Respondent determined, among other things, that petitioners had understated the values of both the KFLP interests that they had transferred to the GRAT's trustees in 1994 and the values of the KILP interests that they had transferred to their children in 1994 and 1995, as follows:

| Year | Partnership Interest | Reported Value | Respondent's Determination |
|------|----------------------|----------------|----------------------------|
| 1994 | KFLP | $38,050 | [1]$1,636,420 |
| 1994 | KILP | 12,411 | 16,547 |
| 1995 | KILP | 17,440 | 13,080 |

[1]  A substantial portion of the difference between the value that petitioners reported for this item and the value that respondent determined is attributable to the sec. 2702(b) issue that respondent subsequently conceded.

Respondent determined in pertinent part that the restrictions on liquidation set forth in section 10.01 of the KFLP and KILP partnership agreements constitute "applicable restrictions" within the meaning of section 2704(b), and that these restrictions should have been disregarded in valuing the limited partnership interests.

Procedural History

After petitioners filed a timely joint petition for redetermination, and respondent filed an answer to the petition, petitioners filed the motion for partial summary judgment currently pending before the Court.  Petitioners raise several alternative arguments in support of their position that respondent erred in applying section 2704(b) in this case.  Petitioners' primary contention is that the interests that they transferred to the GRAT's trustees were merely assignee interests.  In connection with this argument, petitioners maintain that section 2704(b) does not apply to the valuation of the transferred interests because the limited rights of assignees under the partnership agreements are no

more restrictive than the restrictions imposed on assignees under TRLPA. See sec. 2704(b)(3)(B).

Respondent filed an objection to petitioners' motion for partial summary judgment asserting in part that petitioners had not properly raised the assignment issue in their petition.

Petitioners filed a response to respondent's objection and a motion for leave to file an amendment to petition and lodged an amendment to petition with the Court raising the assignee issue. The Court granted petitioners' motion for leave and filed petitioners' amendment to petition.

Respondent subsequently filed an amended answer to the amendment to petition. Respondent also filed a supplemental objection to petitioners' motion asserting that facts remained in dispute regarding petitioners' intent in making the disputed transfers.

Initially, this matter was called for hearing in Washington, D.C. During the hearing, counsel for petitioners conceded that, because the Kerr children were already limited partners of KILP when petitioners transferred additional KILP interests to them in 1994 and 1995, the Kerr children received limited partnership interests, as opposed to assignee interests. However, petitioners argued that these property interests should be valued for Federal gift tax purposes as assignee interests under the willing buyer/willing seller standard set forth in section 25.2512-1, Gift

Tax Regs. While accepting petitioners' concession regarding the transfers to the Kerr children, counsel for respondent argued that additional discovery was needed to determine the nature of the property interests that petitioners transferred to the GRAT's trustees. In response to these developments, the Court informed the parties that it intended to define the property interests that petitioners had transferred to the GRAT's trustees, and decide the legal question of the applicability of section 2704(b) before conducting a trial on valuation issues. In this regard, the Court directed the parties to proceed with informal discovery, submit a stipulation of facts to the Court, and prepare for a partial trial, if necessary, on the issue of the nature of the property interests that petitioners had transferred to the GRAT's trustees.

This matter was subsequently called for a partial trial in Houston, Texas. The parties filed a stipulation of facts, and the Court received testimony from Eastland, petitioner, Mary Kerr Winters, and James Robinson Kerr. Following the aforementioned hearings, the parties filed additional memoranda.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The party opposing the motion cannot rest upon the allegations or denials in the pleadings but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The moving party, however, bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. See Marshall v. Commissioner, 85 T.C. 267, 271 (1985).

On the basis of the record presented, we are satisfied that there are no material facts in dispute with regard to the issues raised in petitioners' motion for partial summary judgment.

Section 2501 imposes a tax for each calendar year on the transfer of property by gift by any individual. Section 2512 provides that if a gift is made in property, "the value thereof at the date of the gift shall be considered the amount of the gift."

Pursuant to section 25.2512-1, Gift Tax Regs., the value of the gift is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts.  See United States v. Cartwright, 411 U.S. 546, 551 (1973).

In the Omnibus Budget Reconciliation Act of 1990 (OBRA 1990), Pub. L. 101-508, sec. 11602(a), 104 Stat. 1388-491, Congress enacted a series of special valuation rules applicable to transfers of interests in corporations, partnerships, and trusts.  One of these provisions, section 2704(b), provides:

SEC. 2704(b).  Certain  Restrictions  on  Liquidation Disregarded.--

(1) In general.--For purposes of this subtitle, if–

(A)  there is a transfer of an interest in a corporation or partnership to (or for the benefit of) a member of the transferor's family, and

(B)  the transferor and members of the transferor's family hold, immediately before the transfer, control of the entity,

any applicable restriction shall be disregarded in determining the value of the transferred interest.

(2) Applicable restriction.--For purposes of this subsection, the term "applicable restriction" means any restriction--

(A) which effectively limits the ability of the corporation or partnership to liquidate; and

(B) with respect to which either of the following applies:

(i)  The restriction lapses, in whole or in part, after the transfer referred to in paragraph (1).

(ii) The transferor or any member of the transferor's family, either alone or collectively, has the right after such transfer to remove, in whole or in part, the restriction.

(3) Exceptions.--The term "applicable restriction" shall not include--

*    *    *    *    *    *    *

(B)  any restriction imposed, or required to be imposed, by any Federal or State law.

Section 25.2704-2(b), Gift Tax Regs., provides that an applicable restriction is a restriction on "the ability to liquidate the entity (in whole or in part) that is more restrictive than the limitations that would apply under the State law generally applicable to the entity in the absence of the restriction."

In sum, section 2704(b) generally provides that, where a transferor and his family control a corporation or partnership, a restriction on the right to liquidate the corporation or partnership shall be disregarded in determining the value of an interest that has been transferred from the transferor to a family member if, after the transfer, the restriction on liquidation either lapses or can be removed by the family.

Section 2704(b)(4) grants the Secretary the authority to promulgate regulations providing that restrictions other than restrictions on liquidation shall be disregarded in determining the value of the transfer of any interest in a corporation or partnership among family members if the restriction has the effect of reducing the value of the transferred interest for transfer tax purposes but does not ultimately reduce the value of the interest to the transferee.  To date, the Secretary has promulgated regulations concerning only restrictions on the liquidation of partnerships.

As previously mentioned, respondent determined that section 10.01 of the KFLP and KILP partnership agreements, which states that the partnerships shall liquidate upon the earlier of December 31, 2043, or the consent of all the partners, contains restrictions on the liquidation of the partnerships that constitute "applicable restrictions" within the meaning of section 2704(b).  Respondent maintains that these restrictions must be disregarded in valuing the interests petitioners transferred to the GRAT's trustees and to their children.  Petitioners contend that section 2704(b) is not applicable on a number of alternative grounds.

I. Petitioners' Argument That Interests Transferred to GRAT's Trustees Were Assignee Interests

Petitioners contend that section 2704(b) does not apply to the KFLP interests that they transferred to the GRAT's trustees because

those interests were merely assignee interests under State law. TRLPA section 7.02(a)(2) provides that an assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or exercise the rights or powers of a partner. TRLPA section 7.02(a)(3) and (4) provides that an assignee is allocated the income, gain, loss, deduction, or credit to which the assignor was entitled, and, until the assignee becomes a partner, the assignor continues to be a partner and to have the power to exercise any rights or powers of a partner. TRLPA section 7.04(a) provides that an assignee of a partnership interest may become a limited partner if and to the extent that the partnership agreement provides for such a transition or on the consent of all partners. Relying on the definition of an applicable restriction contained in section 25.2704-2(b), Gift Tax Regs., petitioners maintain that an assignee's inability to force KFLP to liquidate under the KFLP partnership agreement imposes no greater restriction than those imposed upon assignees under TRLPA.

Petitioners' contention that the partnership interests they transferred to the GRAT's trustees were assignee interests as opposed to limited partnership interests is based on a strict construction of the KFLP partnership agreement. In particular, although petitioners made the transfers to themselves as GRAT's trustees, petitioners nonetheless maintain that their children, as KFLP general partners, had to consent to the admission of the

GRAT's trustees as limited partners pursuant to section 3.06 of the KFLP partnership agreement.

Taxpayers generally are free to structure a business transaction as they please, even if motivated by tax avoidance considerations. See Gregory v. Helvering, 293 U.S. 465, 469 (1935); Yosha v. Commissioner, 861 F.2d 494, 497 (7th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); Johnson v. Commissioner 86 F.2d 710, 712 (2d Cir. 1936), affg. 33 B.T.A. 1003 (1936). However, the tax effects of a particular transaction are informed by the substance of the transaction rather than its form. In Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978), the Supreme Court has articulated the principle as follows:

> In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. The Court has never regarded "the simple expedient of drawing up papers," Commissioner v. Tower, 327 U.S. 280, 291 (1946), as controlling for tax purposes when the objective economic realities are to the contrary. "In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding." Helvering v. Lazarus & Co., 308 U.S. [252, 255 (1939).] * * *

The doctrine that the substance of a transaction will prevail over its form has been applied in Federal estate and gift tax cases. See Heyen v. United States, 945 F.2d 359, 363 (10th Cir. 1991); Estate of Murphy v. Commissioner, T.C. Memo. 1990-472; see

also <u>Schultz v. United States</u>, 493 F.2d 1225 (4th Cir. 1974); <u>Johnson v. Commissioner</u>, <u>supra</u>.

On the basis of our review of the record, we are persuaded by a number of factors that petitioners, in substance, as in form, transferred limited partnership interests to the GRAT's trustees. As discussed below, the factors that we have relied upon in support of our holding on this point include petitioners' failure to respect the literal terms of the partnership agreement, the form of the transfers, and the economic realities and tax motivation underlying the transfers.

## A. Failure To Comply With The Partnership Agreement

Petitioners failed to adhere strictly to the literal terms of the KFLP partnership agreement governing transfers of general partnership interests. Specifically, when KFLP was formed, petitioners transferred three life insurance policies on their lives to the partnership. The Kerr children did not contribute any assets to the partnership. Consistent with the terms of the partnership agreement, petitioners admit that they initially were the sole general partners of KFLP. Pursuant to section 4.01 of the partnership agreement, petitioners subsequently assigned a portion of their general partnership interests in KFLP to each of their children.

Significantly, under the plain language of section 8.20 of the KFLP partnership agreement, petitioners' inter vivos transfers of

general partnership interests to their children, who were permitted assignees within the meaning of section 8.03, should have resulted in the admission of the Kerr children as class B limited partners of KFLP. Petitioners were free, of course, to override section 8.20 of the partnership agreement and admit the Kerr children as general partners of KFLP. Nevertheless, considering the unambiguous terms of section 8.20, it would have been reasonable to expect that petitioners would clearly document the admission of the Kerr children as general partners of KFLP by way of written consents. Given the lack of formality surrounding the admission of the Kerr children as general partners of KFLP, we are left with the impression that petitioners either did not fully appreciate the terms of the KFLP partnership agreement or deemed formal consents to the admission of the Kerr children as general partners to be unnecessary. In either case, petitioners' failure to take any formal steps in regard to the admission of the Kerr children as general partners of KFLP belies petitioners' contention that the Kerr childrens' formal consent was necessary to admit the GRAT's trustees as limited partners of KFLP.

B. The Form of the Transfers

Petitioners transferred limited partnership interests to themselves as GRAT's trustees. Although it is agreed that the GRAT's trustees were permitted assignees under section 8.03 of the KFLP partnership agreement, petitioners contend that the GRAT's

trustees could not be admitted to the partnership as limited partners without the consent of all the KFLP general partners, including the Kerr children. Petitioner testified that he never considered whether he was transferring a limited partnership interest or an assignee interest to himself as a GRAT's trustee. Further, two of petitioners' children testified that they were never asked to consent to the admission of the GRAT's trustees as limited partners.

Although petitioners argue that the absence of formal consents by the Kerr children to the admission of the GRAT's trustees as limited partners suggests that petitioners technically transferred assignee interests to themselves as the GRAT's trustees, it is difficult to reconcile that position with the language petitioners used to document the transfers. As noted earlier, petitioners each signed a document entitled "Assignment of Partnership Interest" stating that "Assignor and Assignee desire that Assignor assign to Assignee a portion of the Partnership Interest of Assignor in [KFLP] * * * such assigned partnership interest being more particularly described in Schedule I hereto." In each case, the "Assignment of Partnership Interest" further stated that "all consents required to effect the conveyance of the Assigned Partnership Interest have been duly obtained." Further, Schedule I, which identified the transferred interests as a "44.535% Class B Limited Partnership Interest", stated that "The Assigned

Partnership Interest constituted a Class B Limited Partnership Interest in [KFLP] when owned by Assignor, and when owned by Assignee, shall constitute a Class B Limited Partnership Interest in said partnership."

Read as a whole, the language used in the "Assignment of Partnership Interest" establishes that petitioners transferred limited partnership interests to themselves as the GRAT's trustees. Although the documents refer to the GRAT's trustees as assignees, the description of the assigned interests contained in Schedule I clearly states that the assignees will hold class B limited partnership interests in KFLP. Equally important, the "Assignment of Partnership Interest" states that petitioners had obtained all necessary consents to effect the conveyance. Because the GRAT's trustees qualified as permitted assignees within the meaning of section 8.03 of the partnership agreement, and petitioners were not required to obtain any consents to transfer an assignee interest to a permitted assignee, the inclusion of the statement that all necessary consents had been obtained also indicates that petitioners were transferring limited partnership interests to the GRAT's trustees. Further, the statement that all necessary consents had been obtained contradicts the testimony of the Kerr children that petitioners never requested that they consent to the transfers to the GRAT's trustees.

C.  Objective Economic Analysis

The objective economic realities underlying the transfers to the GRAT's trustees do not support petitioners' position that the transferred interests should be considered assignee interests. First, and perhaps most importantly, there were no significant differences under the KFLP partnership agreement between the rights of limited partners and assignees. Petitioners were vested with managerial responsibilities for KFLP; neither limited partners nor assignees had any managerial rights. In addition, limited partners and assignees enjoyed equivalent rights to information concerning the partnership's business affairs, and they shared the same interests in the partnership's distributable cash. Finally, while limited partners were permitted to put or sell their interests to the partnership under section 9.02 of the partnership agreement, assignees were given a substantially equivalent right to offer their interests to the partnership under sections 8.04 and 8.21 of the partnership agreement.

The only relevant difference between the rights of limited partners and assignees relates to a limited partner's right to vote on major decisions--a right not extended to assignees. However, given the rare and extraordinary nature of the matters qualifying as a major decision, such as the filing of a bankruptcy petition or approving an act in contravention of the partnership agreement, we

do not consider a limited partner's right to vote on such matters to be significant for purposes of deciding the question presented.

We further note that petitioners retained the right to vote the limited partnership interests and petitioners and the Kerr children had the ability to convert the purported assignee interests to full limited partnership interests or liquidate the partnership at will. To characterize the interests that petitioners transferred to the GRAT's trustees as assignee interests ignores the objective economic reality that there was no meaningful difference between the transfer of an assignee interest as opposed to a limited partnership interest.

D. Tax Motivation

The record shows that Eastland structured petitioners' transfers to the GRAT's trustees primarily to avoid the special valuation rules set forth in section 2704(b). Eastland's writings on the subject of family limited partnerships disclose his belief that the transfer of an assignee interest from one family member to another would serve to circumvent section 2704(b). Accepting petitioner's testimony that he did not consider whether he was transferring a limited partnership interest as opposed to an assignee interest to his GRAT's, it appears that Eastland made a conscious decision not to raise the subject with his clients.

Consistent with the foregoing, we conclude that petitioners transferred limited partnership interests to the GRAT's trustees in substance as in form.

## II. Petitioners' Argument That the Disputed Transfers Must Be Valued as Assignee Interests Under Section 25.2512-1, Gift Tax Regs.

Petitioners contend, in the alternative, that the limited partnership interests in KFLP they transferred to the GRAT's trustees and the limited partnership interests in KILP they transferred to the Kerr children must be valued as assignee interests under the willing buyer/willing seller standard prescribed in section 25.2512-1, Gift Tax Regs. Specifically, petitioners contend that the hypothetical willing buyer is assumed to be an outsider who would approach the purchase of a KFLP or KILP limited partnership interest with the understanding that he could buy only an assignee interest and that there would be no guaranty of admission as a limited partner.

Petitioners' position is based on a misunderstanding of the proper application of the willing buyer/willing seller standard. The nature of the property interest to be valued for Federal gift tax purposes generally is determined under State law. See Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Estate of Bright v. United States, 658 F.2d 999, 1001 (5th Cir. 1981). Once the Court has determined the nature or character of the property interest in

question, Federal law applies to determine how the property interest will be taxed. See United States v. Bess, 357 U.S. 51, 55 (1958).

The valuation standard under section 25.2512-1, Gift Tax Regs., is objective--the standard is based on a purely hypothetical willing buyer and willing seller, each of whom seeks to maximize his or her profit from any transaction involving the property. See Estate of Simplot v. Commissioner, 112 T.C. 130, 151-152 (1999), and cases cited thereat. The hypothetical willing buyer and willing seller are not specific individuals or entities, and their characteristics are not necessarily the same as the personal characteristics of the actual seller or a particular buyer. See Estate of Bright v. United States, supra at 1005-1006; Estate of Simplot v. Commissioner, supra at 152.

Petitioners attempt to expand section 25.2512-1, Gift Tax Regs., beyond its intended scope by using the provision to redefine the character of the property interests in question as assignee interests. See, e.g., Estate of Nowell v. Commissioner, T.C. Memo. 1999-15. However, as explained above, we have already determined that petitioners transferred limited partnership interests to the GRAT's trustees. Further, petitioners admit that they transferred limited partnership interests to their children. Accordingly, section 25.2512-1, Gift Tax Regs., is properly applied by determining the price that a hypothetical willing buyer would pay

a willing seller for limited partnership interests in KFLP and KILP.

## III. Section 2704(b)--Applicable Restriction

Petitioners contend that section 2704(b) is not applicable in this case even if the Court concludes (as we have) that petitioners transferred limited partnership interests to the GRAT's and to their children. Petitioners argue that the provisions of section 10.01 of the partnership agreements do not constitute "applicable restrictions" because: (1) The provisions do not restrict liquidation of the partnerships within the meaning of section 2704(b)(2)(A); and (2) the university's interests in KFLP and KILP demonstrate that the Kerr family did not have the ability unilaterally to lift any restrictions on liquidation within the meaning of section 2704(b)(2)(B)(ii). In the alternative, petitioners assert that any restrictions on liquidation in the partnership agreements are excepted from the definition of an "applicable restriction" pursuant to section 2704(b)(3)(B) and section 25.2704-2(b), Gift Tax Regs. Because we agree with petitioners' contention that restrictions on liquidation in the partnership agreements are excepted from the definition of an "applicable restriction" pursuant to section 2704(b)(3)(B) and section 25.2704-2(b), Gift Tax Regs., we need not consider petitioners' remaining arguments.

Before proceeding with our analysis, we will briefly review the legislative history underlying section 2704. The special valuation rules, of which section 2704 is a part, were enacted in OBRA 1990 section 11602(a), in conjunction with the repeal of section 2036(c).[9] The latter provision, enacted as part of the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, sec. 10402(a), 101 Stat. 1330, 1330-431, represented Congress' attempt to discourage taxpayers' use of "estate freeze" transactions for the purpose of reducing or avoiding Federal transfer taxes. See H. Conf. Rept. 100-495, at 994 (1987), 1987-3 C.B. 193, 274. By 1990, Congress felt compelled to repeal section 2036(c) on the ground that "the statute's complexity, breadth, and vagueness posed an unreasonable impediment to the transfer of family businesses." Informal S. Rept. on S. 3209, 136 Cong. Rec. S15629, S15679-S15680 (daily ed. Oct. 18, 1990).

Although the special valuation rules were enacted as a more targeted substitute for section 2036(c), there is little in the way of direct legislative history relating to the enactment of section 2704. In particular, there was no provision for the special

---

[9] Sec. 2036(c) generally provided that if a person transferred property having a disproportionately large share of the potential appreciation in an enterprise while retaining an interest or right in the enterprise, then the transferred property would be included in the transferor's gross estate, or upon the disposition of either the transferred property or the retained interest, the transferor would be deemed to have made a gift.

valuation rules in H.R. 5835, 101st Cong., 2d Sess. (1990)--the House bill underlying OBRA 1990. Provisions for special valuation rules first appeared in S. 3209, 101st Cong., 2d Sess. (1990)--the text of which the Senate adopted in lieu of the language passed by the House in H.R. 5835. S. 3209, section 7210(a), included new section 2704, which provided in pertinent part as follows:

Treatment of Certain Restrictions and Lapsing Rights.--

For purposes of this subtitle, the value of any property shall be determined--

(1) without regard to any restriction other than a restriction which by its terms will never lapse * * *

The broad language of the Senate version of section 2704 did not survive the ensuing conference between the House and Senate managers of the legislation. Unfortunately, there is no meaningful explanation of the detailed language or concepts that were made a part of section 2704 as finally enacted. H. Conf. Rept. 101-964, at 1137 (1990), 1991-2 C.B. 560, 606, states in pertinent part:

Treatment of certain restrictions and lapsing rights

In general

The conference agreement modifies the provision in the Senate amendment regarding the effect of certain restrictions and lapsing rights upon the value of an interest in a partnership or corporation. These rules are intended to prevent results similar to that of Estate of Harrison v. Commissioner, 52 T.C.M. (CCH) 1306 (1987). These rules do not affect minority discounts or other discounts available under present law. The conferees intend that no inference be drawn regarding the transfer tax effect of restrictions and lapsing rights under present law.

\*    \*    \*    \*    \*    \*    \*

Restrictions

Under the conference agreement, any restriction that effectively limits the ability of a corporation or partnership to liquidate is ignored in valuing a transfer among family members if (1) the transferor and family members control the corporation or partnership, and (2) the restriction either lapses after the transfer or can be removed by the transferor or members of his family, either alone or collectively.

Example 8.--Mother and Son are partners in a two-person partnership.  The partnership agreement provides that the partnership cannot be terminated.  Mother dies and leaves her partnership interest to Daughter.  As the sole partners, Daughter and Son acting together could remove the restriction on partnership termination. Under the conference agreement, the value of Mother's partnership interest in her estate is determined without regard to the restriction.  Such value would be adjusted to reflect any appropriate fragmentation discount.

This rule does not apply to a commercially reasonable restriction which arises as part of a financing with an unrelated party or a restriction required under State or Federal law.  The provision also grants to the Treasury Secretary regulatory authority to disregard other restrictions which reduce the value of the transferred interest for transfer tax purposes but which do not ultimately reduce the value of the interest to the transferee.

With the foregoing as background, we return to our analysis.

Section 2704(b)(2)(A) broadly defines an applicable restriction as "any restriction which effectively limits the ability of the corporation or partnership to liquidate".  However, section 2704(b)(3)(B) excepts from the definition of an applicable restriction "any restriction on liquidation imposed, or required to be imposed, by any Federal or State law".

In what we view as an expansion of the exception contained in section 2704(b)(3)(B), the Secretary promulgated section 25.2704-2(b), Gift Tax Regs., which states in pertinent part: "An applicable restriction is a limitation on the ability to liquidate the entity (in whole or in part) that is more restrictive than the limitations that would apply under the State law generally applicable to the entity in the absence of the restriction." Thus, the question arises whether the partnership agreements involved herein impose greater restrictions on the liquidation of KFLP and KILP than the limitations that generally would apply to the partnerships under State law.

Section 10.01 of the partnership agreements states in pertinent part that the partnerships shall dissolve and liquidate upon the earlier of December 31, 2043, or by agreement of all the partners. Petitioners direct our attention to TRLPA section 8.01, which provides that a Texas limited partnership shall be dissolved on the earlier of: (1) The occurrence of events specified in the partnership agreement to cause dissolution; (2) the written consent of all partners to dissolution; (3) the withdrawal of a general partner; or (4) entry of a decree of judicial dissolution. TRLPA section 8.04 provides that, following the dissolution of a limited partnership, the partnership's affairs shall be wound up (including the liquidation of partnership assets) as soon as reasonably practicable.

On the basis of a comparison of section 10.01 of the partnership agreements and TRLPA section 8.01, we conclude that section 10.01 of the partnership agreements does not contain restrictions on liquidation that constitute applicable restrictions within the meaning of section 2704(b). We reach this conclusion because Texas law provides for the dissolution and liquidation of a limited partnership pursuant to the occurrence of events specified in the partnership agreement or upon the written consent of all the partners, and the restrictions contained in section 10.01 of the partnership agreements are no more restrictive than the limitations that generally would apply to the partnerships under Texas law. Consequently, these provisions are excepted from the definition of an applicable restriction pursuant to section 2704(b)(3)(B) and section 25.2704-2(b), Gift Tax Regs.

Respondent counters that we should compare the restrictions contained in section 10.01 of the partnership agreements with TRLPA section 6.03, which provides:

> A limited partner may withdraw from a limited partnership at the time or on the occurrence of events specified in a written partnership agreement and in accordance with that written partnership agreement. If the partnership agreement does not specify such a time or event or a definite time for the dissolution and winding up of the limited partnership, a limited partner may withdraw on giving written notice not less than six months before the date of withdrawal to each general partner * * *.

Respondent's reliance on TRLPA section 6.03 is misplaced. TRLPA section 6.03 governs the withdrawal of a limited partner from the

partnership--not the liquidation of the partnership. TRLPA section 6.03 sets forth limitations on a limited partner's withdrawal from a partnership. However, a limited partner may withdraw from a partnership without requiring the dissolution and liquidation of the partnership. In this regard, we conclude that TRLPA section 6.03 is not a "limitation on the ability to liquidate the entity" within the meaning of section 25.2704-2(b), Gift Tax Regs.

Respondent's position herein is inconsistent with section 25.2704-2(d) (Example 1), Gift Tax Regs., which states in pertinent part:

> D owns a 76 percent interest and each of D's children, A and B, owns a 12 percent interest in General Partnership X. The partnership agreement requires the consent of all the partners to liquidate the partnership. Under the State law that would apply in the absence of the restriction in the partnership agreement, the consent of partners owning 70 percent of the total partnership interests would be required to liquidate X. * * * The requirement that all the partners consent to the liquidation is an applicable restriction. * * *

Significantly, the restriction on liquidation in the partnership agreement described in the example was not compared with a State law provision (such as TRLPA section 6.03) pertaining to withdrawal from a partnership. Rather, the terms of the partnership agreement are compared with a partnership liquidation provision similar to TRLPA section 8.01. With these points in mind, we reject respondent's argument regarding TRLPA section 6.03.

We are mindful that the Secretary has been vested with broad regulatory authority under section 2704(b)(4). However, the

regulations in place do not support a conclusion that the disputed provisions in the KFLP and KILP partnership agreements constitute applicable restrictions.

Conclusion

In sum, we hold that petitioners transferred limited partnership interests to the GRAT's trustees. However, consistent with the preceding discussion, we conclude that section 10.01 of the partnership agreements does not contain "an applicable restriction" within the meaning of section 2704(b). Accordingly, we will grant petitioners' motion for partial summary judgment as it pertains to this issue.

To reflect the foregoing,

An order granting petitioners' Motion for Partial Summary Judgment will be issued as it relates to the section 2704(b) issue.