T.C. Memo. 2001-263


UNITED STATES TAX COURT


ESTATE OF ELMA MIDDLETON DAILEY, DECEASED, DONOR,
K. ROBERT DAILEY, II, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ESTATE OF ELMA MIDDLETON DAILEY, DECEASED,
K. ROBERT DAILEY, II, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6251-00, 6262-00.      Filed October 3, 2001.


<u>Harold A. Chamberlain</u> and <u>Michael C. Riddle</u>, for

petitioners.

<u>Richard T. Cummings</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By notices dated March 15, 2000, respondent

determined a 1992 Federal gift tax deficiency of $53,808 and

section 6651(a) addition to tax of $13,452 relating to docket No.

6251-00, and a Federal estate tax deficiency of $143,932 relating to docket No. 6262-00. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues are the valuation of certain retained and gift interests in a Family Limited Partnership (FLP) and liability for the section 6651(a) addition to tax.

FINDINGS OF FACT

When the petitions were filed, K. Robert Dailey II was a resident of Harris County, Texas, where, in 1997, his mother, Elma Middleton Dailey, had died, and Mr. Dailey had received an appointment to be her executor. On December 2, 1982, Mrs. Dailey's husband died, leaving to her, among other things, the following:

| Company | Number of Shares | Value per Share | Total Value |
|---|---|---|---|
| Exxon Corp. | 11,108 | $33.63 | $373,562 |
| American Telephone & Telegraph Co. (AT&T) | 400 | 65.75 | 26,300 |

On October 20, 1992, Mrs. Dailey executed a will, a Revocable Living Trust (Trust), and an Agreement of Limited Partnership (Agreement) of Elma Middleton Dailey FLP. The will provided that Mrs. Dailey's residuary estate would pass to the Trust, from which her son would receive the corpus outright.

Upon execution of the Agreement, Mrs. Dailey took a 1-percent general and a 98-percent limited partnership interest,

and Mr. Dailey received a 1-percent limited partnership interest. On November 13, 1992, Mrs. Dailey contributed, to the FLP, 400 AT&T, 20,000 Exxon, and 895 Bell South Corp. shares. Mr. Dailey did not contribute any assets to the FLP. On December 4, 1992, the Texas Secretary of State filed the FLP's Certificate of Limited Partnership.

On December 8, 1992, Mrs. Dailey signed a letter which stated that by "the terms of the Elma Middleton Dailey Family Limited Partnership, this letter shall be sufficient evidence of my transfer and conveyance to you of the following limited partnership interest", giving 45-, 15-, and 38-percent interests to Mr. Dailey, his wife, and the Trust, respectively. On that date, the FLP had $1,267,619, consisting of:

| Company | Number of Shares | Value per Share | Total Value |
|---------|------------------|-----------------|-------------|
| Exxon Corp. | 20,000 | $60.19 | $1,203,750 |
| AT&T | 400 | 47.94 | 19,175 |
| Bell South | 895 | 49.94 | 44,694 |

On March 16, 1995, Mrs. Dailey appointed Mr. Dailey as the FLP managing partner. On July 26, 1995, he replaced her as the trustee of the Trust and FLP general partner, and her 1-percent general partnership interest became a limited one.

On January 10, 1997, Mrs. Dailey died, when the FLP had $1,047,603, consisting of:

| Company | Number of Shares | Value per Share | Total Value |
|---|---|---|---|
| Exxon Corp. | 10,000 | $102.88 | $1,028,750 |
| American Veterinary Corp. | 1,000 | 10.88 | 10,875 |
| Olde Money Market Fund | 7,978 | 1.00 | 7,978 |

The FLP had substantial unrealized capital gains due to the increase in the value of the Exxon stock. On April 17, 1997, Mrs. Dailey's attorney filed, and respondent received, a gift tax return reflecting the gifts of the 45- and 15-percent limited partnership interests to Mr. Dailey and his wife. On the gift tax return, Mrs. Dailey reported a 40-percent discount from the net asset value (NAV) of the partnership's assets.

OPINION

The FLP was validly formed pursuant to Texas law, and we do not disregard it for tax purposes. See Estate of Strangi v. Commissioner, 115 T.C. 478, 487 (2000); Knight v. Commissioner, 115 T.C. 506, 513-515 (2000).

The parties agree that, pursuant to section 7491(a), petitioners have introduced credible evidence, and respondent shall have the burden of proof, relating to the valuation issue.

Fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. Sec. 20.2031-1(b), Estate Tax Regs.; sec. 25.2512-1, Gift Tax Regs. On brief, the

estate further contends that a "hypothetical, willing buyer may only become an <u>assignee</u> under this Partnership Agreement and Texas law", and Mrs. Dailey "actually transferred" assignee interests, but there is "no evidence in the record before this Court regarding the fair market value of any assignee * * * interests".  Article IX of the Agreement provides for "Sale of a Partner's Interest", and the Texas Revised Limited Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (Vernon 1993), provides for assignments but does not prohibit sales.  The plain language of Mrs. Dailey's December 8, 1992, letter states that she was transferring partnership interests pursuant to the Agreement.  See <u>Kerr v. Commissioner</u>, 113 T.C. 449, 463-465 (1999) (rejecting donors' contention that Texas partnership transfers were mere assignments).  In addition, the lack of evidence of the value of any purported assignment supports our rejection of the estate's contention.

Mrs. Dailey gave Mr. Dailey a 1-percent limited partnership interest on formation, but the FLP had no assets on that date. Mrs. Dailey made gifts of 45- and 15-percent limited partnership interests to her son and daughter-in-law, respectively, and thus retained 39 percent in the trust at death.  The parties stipulated, however, that Mrs. Dailey retained 40 percent. Respondent inexplicably does not contend that the initial 1-

percent limited partnership interest transferred to Mr. Dailey had gift tax consequences at formation or funding.

Both parties agree that the given and retained interests were, on December 8, 1992, and January 10, 1997, worth their proportionate share of the NAV of $1,267,619 and $1,047,603 for gift and estate tax purposes, respectively. They disagree, however, about the size of the minority and marketability discounts. Both parties' experts compared the FLP to closed-end mutual funds, which trade at a discount to NAV, but disagreed on the amounts of the discounts. Petitioners' expert, citing published data, opined that the aggregate discount is 40 percent for lack of marketability, control, and liquidity and testified that he considered the significant amount of unrealized capital gains relating to the Exxon stock.

Respondent's expert, on the other hand, relied in part on an unpublished study that he coauthored and, in a revised report submitted at trial, increased the marketability discount purportedly substantiated by his unpublished study from 12.5 percent to 14.1 percent. Respondent's expert opined that an aggregate discount of 15.72 percent on December 8, 1992, and 13.51 percent on January 10, 1997, should be applied. At trial, respondent's expert testified that he could not recall reviewing the Agreement and, although he believed that unrealized capital gains are "an important source of discounts", he did not review

the documents to determine if the FLP had any such gains. Respondent's expert's testimony was contradictory, unsupported by the data, and inapplicable to the facts.

We are "not bound by the opinion of any expert witness when that opinion is contrary to our own judgment." Estate of Gilford v. Commissioner, 88 T.C. 38, 56 (1987). Although neither expert was extraordinary, petitioners' expert provided a more convincing and thorough analysis than respondent's expert. We conclude that an aggregate marketability and minority discount of 40 percent is warranted and is applicable to the aforementioned interests.

Section 6651(a)(1) imposes an addition to tax for failure to file a required return on the date prescribed. This addition to tax is imposed on the amount of tax required to be shown on the return. Although decedent's gift tax return was filed after the prescribed due date, the property valuation on the return was correct and, after application of decedent's unified credit, no gift tax was due. Accordingly, the estate is not liable for the section 6651(a)(1) addition to tax.

Contentions we have not addressed are moot, irrelevant, or meritless.

To reflect the foregoing,

Decisions will be entered

for petitioners.